762 P.2d 128

**CITY OF PHOENIX, a municipal corporation, Petitioner,**

**v.**

**SUPERIOR COURT of the State of Arizona, In and For the COUNTY OF MARICOPA, Honorable Joseph D. Howe, a judge thereof, Respondent Judge.**

**LAIDLAW WASTE SYSTEMS, INC., a foreign corporation; Heemstra & Slager, Inc., an Arizona corporation, dba Arizona Waste services; Sunrise Disposal Services, Inc., an Arizona corporation; Harry Thurston and John Steele, Real Parties in Interest.**

**No. 1 CA-SA 88-144.**

Court of Appeals of Arizona, Division 1, Department D.

Sept. 27, 1988.

Roderick G. McDougall, Phoenix City Atty. by Larry F. Felix, Asst. Chief Counsel, Phoenix and Meyer, Hendricks, Victor, Osborn & Maledon, P.A. by Andrew D. Hurwitz, John A. LaSota, Jr. and Dawn L. Dauphine, Phoenix, for petitioner.

J. LaMar Shelley, Mesa, amicus curiae League of Arizona Cities and Towns.

Gervais R. Grand, Phoenix, amicus curiae Citizens for Annexation of the Northeast Valley (CFANV).

Friedeman, O'Leary & Nomura by John Friedeman, Phoenix, for real parties in interest.

## OPINION

JACOBSON, Judge.

The City of Phoenix petitions for special action relief from the trial court's preliminary injunction enjoining the City from enforcing or implementing its annexation of an unincorporated area of approximately 10 square miles northeast of Phoenix. The trial court granted the injunction after finding that the City's annexation would result in a "taking" of the business interests of three private garbage collection services without just compensation, in violation of Ariz. Const. art. 2, § 17. The issue presented is whether any legal basis exists for enjoining the City's annexation based upon an alleged unconstitutional "taking." [1]

### Factual Background

In early 1988 the City gave notice of its intention to annex an area north of Bell Road, to Pinnacle Peak Road, running from 20th Street to Tatum Blvd., known as the Northeast Territory.[2] On March 3, 1988, Laidlaw Waste Systems, Inc., wrote to the Phoenix City Manager, advising that it was currently providing trash removal services to residents of the Northeast Territory and would be harmed by the institution of City services after annexation. The letter stated:

> In the event of the annexation ... [Laidlaw] will be immediately put out of business by virtue of the City monopoly which would be put in place through the annexation.... This would constitute a taking, as defined in the Fifth Amendment to the United States Constitution and Article 2, § 17 of the Arizona State Constitution.
>
> Article 2, § 17 of the Arizona State Constitution requires that provision for compensation be made prior to a taking. The purpose of this letter is to advise the City of my clients' interests and request that the City comply with the requirements of the Arizona State Constitution prior to adopting the above described annexations by making provision for compensation.

The City did not respond to this letter.

On May 18, 1988, after receiving petitions approving the annexation signed by 58% of the property owners in the area, the Phoenix City Council enacted Ordinance No. G–3118, annexing the Northeast Territory, effective June 18, 1988. On June 7, 1988, the plaintiffs/real parties in interest (hereinafter referred to as plaintiffs) filed an action in Maricopa County Superior Court to set aside the annexation, alleging that the annexation constituted a taking

1. The plaintiffs/real parties in interest deny that the trial court "enjoined the annexation," and allege that the court merely "restrained the City from implementing or enforcing the annexation." We fail to see the distinction.

2. This was the City's second attempt to annex this territory. Its first attempt, which involved a similar area with slightly different boundaries, was thwarted by a challenge in 1984 attacking the constitutionality of A.R.S. § 9–471 on equal protection and due process grounds. The Arizona Supreme Court upheld the statute and re-

manded the case to the superior court. See Bowler v. City of Phoenix, No. 18422 (Ariz. mem. dec. May 27, 1986). The superior court subsequently invalidated the annexation for failure to comply with the Arizona Open Meeting Law, A.R.S. § 38–431.02; that decision was affirmed by this court on July 7, 1988. See Thurston v. City of Phoenix, 157 Ariz. 343, 757 P.2d 619 (App.1988). The present annexation ordinance was passed while the validity of the first annexation attempt was pending on appeal.

without just compensation in violation of the Arizona and United States Constitutions.[3] The action sought a preliminary injunction prohibiting the City from implementing or enforcing the annexation and just compensation for plaintiffs' damages and attorneys' fees. The plaintiffs' theory of "a taking without prior just compensation" is based on the assertion that the City, after annexation was effective, would provide exclusive fire protection and trash removal services thereby taking clientele from the business plaintiffs and causing irreparable harm to the individual taxpayers who would be subject to city regulation and taxation.[4]

On June 16, 1988, after a hearing on the motion for injunctive relief, the trial court issued its preliminary injunction, finding that the plaintiffs would suffer irreparable injury as a result of the annexation, that the City's conduct in demanding plaintiffs' customer lists and billing status and in demanding that they cease business in the territory "constitutes a taking," and that plaintiffs had shown a reasonable likelihood of success on the merits. The order further stated:

IT IS ORDERED:

That during the pendency of this action, the City of Phoenix, its officers, agents and employees are hereby enjoined from enforcing, implementing or taking any act in reliance upon the validity of the Northeast Annexation, which was enacted by the City's Ordinance No. G–3118.

On July 13, 1988, the City filed this petition for special action, requesting that we vacate the preliminary injunction because the plaintiffs hold no franchise or contractual right to provide exclusive services to the residents of the Northeast Territory, and thus have no constitutional right to be free from the City's competition. The City also argues that the annexation itself does not constitute a taking of the plaintiffs' property. The City also argues that if any conduct by the City harmed the plaintiffs, the proper remedy would be to enjoin that conduct, or to award damages, rather than to enjoin an annexation which complies with all statutory requirements. The League of Arizona Cities and Towns has filed an *amicus curiae* brief in support of the City's position, as has the association of Citizens for Annexation of the Northeast Valley.

### Special Action Jurisdiction

■ The plaintiffs argue that because the preliminary injunction is appealable, *see* A.R.S. § 12–2101(F), and because the City filed its notice of appeal from that order a few days after it filed its petition here, we should not accept special action jurisdiction in this matter. We agree with the City, however, that the issue is one of law with statewide significance. *See Summerfield v. Superior Court,* 144 Ariz. 467, 469, 698 P.2d 712, 714 (1985). The preliminary injunction leaves the annexed territory in a "governmental limbo" pending an appeal that would include the same issue now before us and that would be based on the same undisputed facts. Because of the important public interest served by the annexation process and because of the existence of several pending cases presenting the same potential issue, we exercise our discretion to accept special action jurisdiction.

### The Preliminary Injunction

Plaintiffs sought to set aside the annexation, arguing that the City's conduct in competing with private trash collection services would cause them a loss of business without compensation, constituting a "taking" in violation of Ariz. Const. art. 2,

---

**3.** The petition also alleged that A.R.S. § 9–471, which authorized the annexation, violated the plaintiffs' constitutional right to substantive due process. That issue is not involved in this special action.

**4.** Laidlaw Waste Systems, Inc., contended it would lose 1500 customers; Heemster & Slagel, Inc. dba Arizona Waste Services, claimed it would lose one-third of its residential business, and Sunrise Disposal Services, Inc., alleged it would be forced out of business completely, if the City were not enjoined from implementing the annexation.

§ 17.[5] The City responded that lawful competition did not result in a "taking," and thus the preliminary injunction could not be sustained on any lawful basis.

We frame the issue more narrowly. We need not decide whether the City's subsequent conduct may constitute a taking. Rather, we merely need to determine whether enjoining the annexation was an appropriate remedy. We therefore address only the appropriateness of injunctive relief.

■ The scope of appellate review of an order granting an injunction is limited to consideration of whether a clear abuse of judicial discretion has been shown. *Financial Associates, Inc. v. Hub Properties, Inc.*, 143 Ariz. 543, 694 P.2d 831 (App. 1984). The trial court clearly abuses its discretionary power to grant an injunction by misapplying the law to undisputed facts. *Gillespie Land & Irrigation Co. v. Gonzalez*, 93 Ariz. 152, 379 P.2d 135 (1963).

Here, plaintiffs argued that because they will be unable to compete with the City's institution of tax-subsidized trash collection services upon annexation, the direct and natural consequences of annexation will be a loss of their business interest. Based upon this theory, the plaintiffs contend that injunctive relief was appropriate for the following reasons:

An accepted remedy for a city ordinance which constitutes a taking is that the ordinance be voided. This was the relief given in *Corrigan v. City of Scottsdale*, 149 Ariz. 553, 720 P.2d 528 (App.1985), modified on other grounds 149 Ariz. 538, 720 P.2d 513 (1986) [*cert. denied*], where a city zoning ordinance was voided because it constituted an unlawful taking in contravention of Article 2, Section 17 of the Arizona Constitution. Thus, if the Northeast annexation will result in a taking or damaging of the Plaintiffs' proper-

ties, the proper remedy is to void the annexation. Thus, a preliminary injunction is an appropriate immediate step that will preserve the status quo.

■ Although *Corrigan* stands for the proposition that a zoning ordinance that actually results in a taking is void, does not support plaintiffs' position. In *Corrigan*, the City of Scottsdale enacted a zoning ordinance that prohibited any use of approximately 80% of Corrigan's land. The court determined that the enactment of such a confiscatory ordinance was beyond the City's police power and was invalid as a "disguised attempt to take private property for public use without resort to eminent domain." *Corrigan*, 149 Ariz. at 561, 720 P.2d at 536. However, the enactment of an annexation ordinance, which complies with statutory requirements, is not in and of itself confiscatory. Rather, as was pointed out seventy years ago in *Blount v. MacDonald*, 18 Ariz. 1, 155 P. 736 (1916), by annexation "the city acquired the right to exercise over such property and the inhabitants all the political and governmental powers delegated to it by law to be exercised over any and all parts of its political domain." *Id.* at 7, 155 P.2d at 738. Thus, the mere acquisition of the right to exercise governmental powers pursuant to the annexation ordinance does not itself constitute a taking of plaintiffs' property. Rather, some additional act of the City in the exercise of that power must be undertaken. We do not determine whether such subsequent acts of the City would constitute a taking.[6] Suffice it to say at this point that the right to exercise governmental control in the context of this annexation, as compared to the exercise of that control through subsequent acts of the City, does not constitute a taking within the meaning of the state constitution.

Similarly, we find distinguishable the other cases plaintiffs rely on to support the

---

5. Ariz. Const. art. 2, § 17 provides:
   No private property shall be taken or damaged for public or private use without just compensation having first been made, paid into court for the owner, secured by bond as may be fixed by the court, or paid into the State Treasury for the owner on such terms

and conditions as the Legislature may provide, ...

6. Such acts might consist of the City entering into competition with the plaintiffs in trash collection or demanding that the plaintiffs cease business in the area.

injunction. It is true the superior court has the power to enjoin the passage of an annexation statute when its procedural validity is attacked. *See* A.R.S. § 9–471(C) (any interested party may petition to set aside an annexation for failure to comply with the statutory procedures); *City of Tucson v. Garrett,* 77 Ariz. 73, 267 P.2d 717 (1954) (injunction appropriate when petitions for annexation were insufficient as a matter of law); *Gorman v. City of Phoenix,* 70 Ariz. 59, 216 P.2d 400 (1950) (landowner may seek to enjoin annexation if city lacks jurisdiction over subject realty because not contiguous to city boundaries). This suit, however, unlike the above cases, involves no challenge to the procedural validity of the annexation process. Rather, the parties agree that the City complied with the statutory requirements of A.R.S. § 9–471. Therefore, the cases relied on by plaintiffs to support the injunction do not apply.

■ Additionally, we point out that the legislature, pursuant to its grant of authority under Ariz. Const. art. 2, § 17, has provided statutory remedies for acts of eminent domain, *see* A.R.S. § 9–518, and inverse condemnation, *see* A.R.S. § 11–972 and A.R.S. § 12–1111 *et seq.*[7] These statutes provide an adequate remedy for any alleged taking which might occur in the future. *See Santa Cruz County v. Burgoon,* 12 Ariz. 295, 100 P. 792 (1909).

We hold, for the above reasons, that the preliminary injunction enjoining enforcement or implementation of the annexation was an inappropriate remedy for plaintiffs' claim of a taking resulting from the City's competition with plaintiffs' businesses. We have, therefore, previously entered an order granting petitioner's requested relief, reversing the trial court's order enjoining the annexation, and directing the trial court to enter its order quashing the preliminary injunction filed June 16, 1988.

FIDEL, P.J., and HAIRE, J., concur.

---

7. For example, in inverse condemnation actions, A.R.S. § 12–1124 provides the following remedies:

> Payment of compensation and damages may be made to a defendant or defendants entitled thereto, or the money may be deposited in court and distributed to the defendant or defendants entitled thereto. If the money is not so paid or deposited, the defendant or defendants may have execution as in civil actions, and if the money cannot be collected on execution, the court, upon a showing to that effect, shall set aside and annul the entire proceedings, and restore possession of the property to defendant or defendants, if possession has been taken by plaintiff.