949 P.2d 983

**ARIZONA DEPARTMENT OF PUBLIC SAFETY, Joe Albo, Director; Arizona Department of Corrections, Terry L. Stewart, Director; Maricopa County Adult Probation Department, Norman Helber, Administrator, Defendants–Petitioners,**

v.

**SUPERIOR COURT of the State of Arizona, In and For the COUNTY OF MARICOPA, The Honorable B. Michael Dann, a judge thereof, Respondent,**

**Kenneth J. FALCONE and Harry Dennis Brumett, Plaintiffs–Respondents/Real Parties in Interest.**

No. 1 CA–SA 97–0307.

Court of Appeals of Arizona, Division 1.

Dec. 4, 1997.

As Amended Dec. 16, 1997.

Grant Woods, Attorney General by John E. Birkemeier, Assistant Attorney General, Thomas J. Dennis, Assistant Attorney General, Phoenix, for Defendants–Petitioners.

Kenneth John Falcone, Tucson, In Propria Persona.

Harry Dennis Brumett, Phoenix, In Propria Persona.

Richard M. Romley, Maricopa County Attorney by Susan Sherwin, Deputy County Attorney, Phoenix, for Amicus Curiae Maricopa County Sheriff.

## OPINION

EHRLICH, Judge.

The Arizona Department of Public Safety ("DPS"), the Arizona Department of Corrections and the Maricopa County Adult Probation Department seek review by special action of declarations by the respondent Maricopa County Superior Court Judge B. Michael Dann regarding the sex-offender community-notification statute. ARIZ.REV. STAT. ANN. ("A.R.S.") § 13–3825 (Supp.

1997).[1] Judge Dann held that the application of the statute to persons such as Kenneth Falcone and Harry Dennis Brumett who committed a qualifying offense prior to the June 1, 1996, effective date of the statute violates the *Ex Post Facto* Clauses of the United States and Arizona Constitutions. UNITED STATES CONST. art. 1, § 10; ARIZ. CONST. art. 2, § 25.[2] He also preliminarily enjoined the application of section 13–3825 to Falcone and Brumett. For reasons given below, we conclude that it is appropriate to accept jurisdiction, and we further determine that retroactive application of section 13–3825 is constitutional.

### A. Background

Falcone and Brumett were convicted of sex offenses against children. As sex offenders, Arizona law requires that each register with the sheriff of the Arizona county in which each resides. A.R.S. § 13–3821(A) (Supp. 1997). The information required to be provided by the offender is forwarded to DPS and to the chief of police, if there is one, where the offender resides. A.R.S. § 13–3821(D) (Supp.1997).

In *State v. Noble*, 171 Ariz. 171, 829 P.2d 1217 (1992), the Arizona Supreme Court considered an *ex post facto* challenge to the application of the registration statute to persons who had committed qualifying offenses prior to the statute's effective date. The court found the retroactive application of the statute to be constitutional. *Id.* at 178, 829 P.2d at 1224.

In 1995, the Arizona legislature added a community-notification provision to the statute. A.R.S. § 13–3825. This statute now is the subject of an *ex post facto* challenge.[3]

Falcone filed a complaint for declaratory judgment seeking the superior court's determination that the operation of the *Ex Post Facto* Clauses bars the application of Arizona's sex-offender community-notification

statute to those who committed qualifying offenses before the statute's effective date. Brumett successfully moved to intervene and then moved for a preliminary injunction to suspend application of the law.

In a minute entry, Judge Dann concluded that the community-notification statute violated the *ex post facto* prohibition and thus could not be applied to Falcone and Brumett. He then enjoined the petitioners plus "the State of Arizona and its officers, agents and employees from applying or attempting to apply any of the provisions of the community notification statute ... to [the real parties in interest] or to others whose qualifying offenses were committed prior to June 1, 1996." Although requested, there were neither findings of fact nor conclusions of law as required. *Mandraes v. Hungerford,* 127 Ariz. 585, 587, 623 P.2d 15, 17 (1981) (applying ARIZ. R. CIV. P. 52(a)).

This ruling differed from the conclusion of at least one other superior court judge who found the retroactive application of the notification statute constitutional. *Matthews v. City of Tempe,* Maricopa County Superior Court CV97–07756 (Hon. Brian R. Hauser, May 16, 1997). Nonetheless, on his own motion, Judge Dann also entered an order to show cause why the case before him should not be certified as a class action.

### B. Special–Action Jurisdiction

Special-action review usually is not available when there is an adequate remedy by appeal, ARIZ. R.P. SPEC. ACT. 1; *see* A.R.S. § 12–2101(F)(2), but the availability of an appeal does not foreclose the exercise of this court's discretion to accept jurisdiction. *Vo v. Superior Court,* 172 Ariz. 195, 198, 836 P.2d 408, 411 (App.1992); *City of Phoenix v. Superior Court,* 158 Ariz. 214, 216, 762 P.2d 128, 130 (App.1988). The petitioners contend, and we agree, that, in this case, we

---

1. The Maricopa County Sheriff has been permitted to participate as amicus curiae.

2. The analysis of the *Ex Post Facto* Clauses of both constitutions is the same. *State v. Noble,* 171 Ariz. 171, 173 n. 4, 829 P.2d 1217, 1219 n. 4 (1992).

3. The requirement of sex-offender registration and community-notification is sometimes known popularly as "Megan's Law" after a child who was abducted, raped and murdered by a neighbor who had been convicted of sex offenses involving young girls. *See E.B. v. Verniero,* 119 F.3d 1077, 1081 (3d Cir.1997).

should accept jurisdiction because the remedy of a direct appeal is unsatisfactory: The issue presented is purely one of law and one on which the superior court judges are divided; it specifically presents a constitutional question, therefore an issue of statewide importance; and it serves judicial economy to address a matter of first impression which is certain to occur again. *Pompa v. Superior Court*, 187 Ariz. 531, 533, 931 P.2d 431, 433 (App.1997); *State v. Superior Court (Richard)*, 184 Ariz. 103, 104, 907 P.2d 72, 73 (App.1995); *Vo*, 172 Ariz. at 198, 836 P.2d at 411; *City of Phoenix*, 158 Ariz. at 216, 762 P.2d at 130.

### C. Scope of Review

We review an order granting a preliminary injunction for a clear abuse of judicial discretion, such as the misapplication of the law to undisputed facts. *City of Phoenix*, 158 Ariz. at 217, 762 P.2d at 131. A statute's constitutionality is a matter of law analyzed *de novo* by this court, *State v. Buccini*, 167 Ariz. 550, 556, 810 P.2d 178, 184 (1991), beginning with the presumption that the statute is constitutional. *State v. Tocco*, 156 Ariz. 116, 119, 750 P.2d 874, 877 (1988); *McClead v. Pima County*, 174 Ariz. 348, 352, 849 P.2d 1378, 1382 (App.1992). Thus, the party challenging its validity bears the burden of establishing that the legislation is unconstitutional; any doubts are resolved to the contrary. *McClead*, 174 Ariz. at 352, 849 P.2d at 1382.

### D. Analysis

"Every law that changes the punishment, and inflicts a greater punishment than the law annexed to the crime, when committed" violates the *Ex Post Facto* Clauses of the Arizona and United States Constitutions. *Calder v. Bull*, 3 U.S. (3 Dall.) 386, 390, 1 L.Ed. 648 (1798) (emphasis omitted); *California Dep't of Corrections v. Morales*, 514 U.S. 499, 506 n. 3, 115 S.Ct. 1597, 1602 n.

2, 131 L.Ed.2d 588 (1995); *see also State v. Cocio*, 147 Ariz. 277, 284, 709 P.2d 1336, 1343 (1985) ("[T]he Arizona Legislature may not enact a law which imposes any additional or increased penalty for a crime after its commission.").[4]

Initially we must determine whether the statute is retroactive, *Noble*, 171 Ariz. at 174, 829 P.2d at 1220, and we conclude that it is. First, although the community-notification legislation originally was to apply prospectively, Act of April 19, 1995, ch. 257, section 11, subsec. A., 1995 Ariz. Sess. Laws 2016, the legislature amended A.R,S. section 13–3825 in 1996 and specifically included a retroactivity provision. Act of May 1, 1996, ch. 315, sec. 22, subsec. A., 1996 Ariz. Sess. Laws 1981. Second, the law "change[d] the legal consequences of acts completed before its effective date." *Weaver v. Graham*, 450 U.S. 24, 31, 101 S.Ct. 960, 965, 67 L.Ed.2d 17 (1981); *see also State v. Yellowmexican*, 142 Ariz. 205, 207, 688 P.2d 1097, 1099 (App.) (a statute is retroactive if it applies "to events occurring before its enactment" and "disadvantage[s] the offender"), *adopted and approved*, 142 Ariz. 91, 688 P.2d 983 (1984). Third, this change in the law operated to the disadvantage of the real parties in interest, as the court in *Noble* found of the sex-offender registration statute. 171 Ariz. at 174, 829 P.2d at 1220.

Accepting the retroactivity of the legislation, the inquiry in an *ex post facto* challenge distills to the "sole question" whether the statute is punitive or whether it is regulatory. *Id.* at 173–75, 829 P.2d at 1219–21. If the statute is punitive, then it may not be applied retroactively; if it is regulatory, retroactive application does not offend the *Ex Post Facto* Clauses. *Id.*

To determine whether the community-notification statute is ·punitive, we first examine the legislative purpose in enacting the statute. *Id.* at 175, 829 P.2d at 1221.

---

4. A legislature is prohibited by an *ex post facto* clause from making criminal an act that was innocent when performed and from making the punishment of a criminal act greater than when the act was committed. Similarly, because it would operate like an *ex post facto* law, a court is barred by the Due Process Clause from reaching the same result by judicial construction. *Bouie v. City of Columbia*, 378 U.S. 347, 353–55, 84 S.Ct. 1697, 1702–03, 12 L.Ed.2d 894 (1964); *Keeler v. Superior Court of Amador County*, 2 Cal.3d 619, 87 Cal.Rptr. 481, 490–91, 470 P.2d 617, 626–27 (1970).

The intent of the legislature is singularly important although not the sole determinant. *Kansas v. Hendricks,* —— U.S. ——, ——, 117 S.Ct. 2072, 2082, 138 L.Ed.2d 501 (1997); *United States v. Ursery,* 518 U.S. 267, 116 S.Ct. 2135, 2147, 135 L.Ed.2d 549 (1996). "If the legislative aim was punitive, we treat the [statutory] requirement as a punishment. If, on the other hand, the legislature indicated a non-punitive purpose, we must 'inquire further whether the statutory scheme was so punitive either in purpose or effect as to negate that intention.'" *Noble,* 171 Ariz. at 175, 829 P.2d at 1221 (quoting *United States v. Ward,* 448 U.S. 242, 248–49, 100 S.Ct. 2636, 2641, 65 L.Ed.2d 742 (1980), citing *Flemming v. Nestor,* 363 U.S. 603, 617–21, 80 S.Ct. 1367, 1376–78, 4 L.Ed.2d 1435 (1960)).

■ The history of the sex-offender registration statute contained little evidence of legislative intent. *Noble,* 171 Ariz. at 175, 829 P.2d at 1221. In passing the community-notification statute, however, the legislature furnished ample indication that it intended to protect communities, not punish sex offenders.

> The legislature finds that some sex offenders pose a high risk of engaging in sex offenses after being released from imprisonment or commitment and that *protecting the public from sex offenders is a paramount governmental interest.* Because the penal and mental health components of our justice system are largely hidden from public view, the lack of information from either source may result in a failure of both systems to meet this paramount public safety concern. Overly restrictive confidentiality and liability laws governing the release of information about sexual predators have reduced the willingness of agencies to release information that could be appropriately released under public disclosure laws. This lack of disclosure has increased the risk to public safe-

ty. Persons who have been convicted of committing a sex offense have a reduced expectation of privacy because of the public's interest in public safety and in the effective operation of government. The release of information about sexual predators to public agencies and, under limited circumstances, to the public will further the government's interests of public safety and public scrutiny of the criminal and mental health systems in this state if the information that is released is rationally related to the furtherance of these goals.

Act of May 1, 1996, ch. 315, sec. 20, 1996 Ariz. Sess. Laws 1980–81 (emphasis added). This evinces a regulatory objective to forestall future incidents of sexual abuse by notifying those who may well encounter a potential recidivist, not to punish a past offense. *See Russell v. Gregoire,* 124 F.3d 1079, 1090 (9th Cir.1997) (interpreting similar Washington statute); *see also Roe v. Office of Adult Probation,* 125 F.3d 47, 53–54 (2d Cir.1997); *E.B. v. Verniero,* 119 F.3d 1077, 1096–97 (3d Cir.1997).[5]

Additionally, the structure of the legislation, consistent with this express statement of non-punitive intent, provides further "objective manifestations" that the statutory scheme serves the stated ends of community protection. *See Ursery,* 518 U.S. at ——, 116 S.Ct. at 2147. The statutory design provides for community notification guided by a "community notification guidelines committee" through a multi-tiered scheme of requirements that is "based on the risk that a particular sex offender poses to the community." A.R.S. §§ 13–3825, 13–3826 (Supp. 1997). Depending on that risk, although the information disseminated is the same, community notification may be mandatory, permissive or permissive and limited.

The emphasis of the notification program is on community. The guidelines committee bears the charge not only of formulating the

**5.** Judge Dann relied upon *Roe v. Office of Adult Probation,* 938 F.Supp. 1080 (D.Conn.1996), and *Doe v. Pataki,* 940 F.Supp. 603 (S.D.N.Y.1996). Both of these cases had, however, been reversed. *Roe v. Office of Adult Probation,* 125 F.3d 47 (2d Cir.1997); *Doe v. Pataki,* 120 F.3d 1263 (2d Cir.1997). He also cited *Artway v. Attorney General,* 81 F.3d 1235 (3d Cir.1996), in which the court analyzed the portions of New Jersey's statute specifically pertaining to sex-offender registration and notification to law-enforcement agencies. However, in *E.B.,* the same court interpreting the same statute upheld the remainder of the sex-offender community-notification law. 119 F.3d 1077.

directions according to the degree of jeopardy that an individual offender poses to the community but also of monitoring their implementation. A.R.S. § 13–3826.[6] It clearly is designed to represent those constituencies expected to be interested and knowledgeable.

■ Having identified substantial objective evidence of non-punitive legislative intent, we proceed to a consideration whether the effect of the statutory scheme negates that intent. *Hendricks,* —— U.S. at ——, 117 S.Ct. at 2082; *Ursery,* 518 U.S. at ——–——, 116 S.Ct. at 2147–48; *Noble,* 171 Ariz. at 175, 829 P.2d at 1221. In the face of such persuasive objective evidence, the challenger seeking to prove that a statute is punishment bears a "heavy burden" of proof, which may be sustained only by "the clearest proof" that "the statutory scheme is so punitive either in purpose or effect as to negate" the express non-punitive intent. *Hendricks,* —— U.S. at ——, 117 S.Ct. at 2082; *see also Ursery,* —— U.S. at ——, 116 S.Ct. at 2148; *Flemming,* 363 U.S. at 617, 80 S.Ct. at 1376; *Roe,* 125 F.3d at 54. We conclude that Falcone and Brumett have not carried this burden.

Seven factors enumerated in *Kennedy v. Mendoza–Martinez,* 372 U.S. 144, 168–69, 83 S.Ct. 554, 567–68, 9 L.Ed.2d 644 (1963), were used in *Noble,* 171 Ariz. at 175, 829 P.2d at 1221, to guide the inquiry. These considerations provide a useful framework, although they are "certainly neither exhaustive nor dispositive." *Ward,* 448 U.S. at 249, 100 S.Ct. at 2641. Indeed, after *Noble,* the Supreme Court in *Ursery* seemed to return to the two-part "intent-effects test" set forth in *United States v. One Assortment of 89 Firearms,* 465 U.S. 354, 104 S.Ct. 1099, 79 L.Ed.2d 361 (1984). 518 U.S. at ——, 116 S.Ct. at 2147. The "effects" half of the test utilized several of the *Mendoza–Martinez* elements, however. *Id.* at ——–——, 116 S.Ct. at 2148–49.

*1. Affirmative Disability or Restraint*

In defined circumstances, potential employers and government agencies not involved in law-enforcement but to which the information is relevant, as well as law-enforcement agencies, have access to the offender's history; the record includes not only the nature of the conviction but identifying information. A.R.S. § 41–1750(A), (G) (Supp.1997); *see also* ARIZ. R.CRIM. P. 37.1(a) ("In every criminal case filed in any court, the final disposition of the case shall be reported to the criminal identification section of the Department of Public Safety if the defendant was incarcerated or fingerprinted as a result of the charge."). In *Noble,* the court said that, because the information thus would be available, albeit in designated situations, the additional impact of registration is acceptable. 171 Ariz. at 176, 829 P.2d at 1222. In comparison, the community-notification provisions may serve to furnish information to a larger audience.

E. ... The guidelines shall provide for levels of notification based on the risk that a particular sex offender poses to the community. The notification requirements are as follows:

1. For level three offenders, the notification shall be made to surrounding neighborhood, area schools, appropriate community groups and prospective employers which shall include a flyer with a photograph and exact address of the offender as well as a summary of the offender's status and criminal background. A press release and a level three flyer shall be given to the local electronic and print media to enable information to be placed in a local publication....

2. For level two offenders, the notification may be made to the immediate neighbors, schools, appropriate community groups and prospective employers which may include a flyer with a photograph and address or the general area where the offender will be residing as well as a brief

---

**6.** It is comprised of the state attorney general, the chairpersons of the judiciary committees of the state senate and house of representatives, two sheriffs, two chiefs of police, two county attorneys and two adult probation officers—one from a populous county and one from a non-metropol- itan county, a state adult parole administrator, the directors of DPS and the Arizona Department of Transportation, and a psychologist. A.R.S. § 13–3826(A). There are as well a member of the minority party from the state senate and the house of representatives as advisors. *Id.*

general summary of the offender's status and criminal background....

3. For level one offenders, the local law enforcement agency that is responsible for notification shall maintain information about the offender. The local law enforcement agency may disseminate this information to other law enforcement agencies and may give notification to the people with whom the offender resides.

A.R.S. § 13–3826(E).

If, however, given the level of permitted statutory disclosure, registration as a sex offender has only a "marginal impact on the information available to non-law enforcement personnel" such that it does not constitute "the kind of affirmative disability or restraint usually associated with criminal punishment," *Noble,* 171 Ariz. at 176, 829 P.2d at 1222, then this measured and incremental degree of further disclosure similarly is not of the status comprising punishment. The offender is not labeled as more culpable than he was before. His rights are no more curtailed. There is no additional restraint on his movement; he need only provide a change of address to the registering authority, and the information required to be given is no more private than that disclosed originally.

### 2. Historically Regarded as Punishment

■ The court in *Noble* said that sex-offender registration "has traditionally been viewed as punitive," *id.,* but it did not attach much weight to this component because the limited access to the information "significantly dampen[ed] its stigmatic effect." *Id.* at 177, 829 P.2d at 1223. Again, as was true with the first factor, the nature and degree of further disclosure to the community suggest that little more weight be given to this element than was given to it in *Noble.* Further, to the extent that community notification would traditionally be viewed as punitive, the topic of the fourth and related *Mendoza–Martinez* factor, such a determination does not necessarily override the non-punitive nature of the notification statute if "the restriction of the individual comes about as a relevant incident to a regulation...." *DeVeau*

*v. Braisted,* 363 U.S. 144, 160, 80 S.Ct. 1146, 1155, 4 L.Ed.2d 1109 (1960).

### 3. Scienter

The community-notification statute adds no additional requirement of *scienter* or "evil mind" in order to apply. The offender need only be released into the community to trigger the provisions of the statute.

### 4. Traditional Aims of Punishment: Retribution and Deterrence

■ In *Noble,* the court held that sex-offender registration serves, "at least in part, the traditional deterrent function of punishment, the notion being that a convicted sex offender is less likely to commit a subsequent offense if his whereabouts are easily ascertained by law enforcement officials." 171 Ariz. at 177, 829 P.2d at 1223. This rationale is less applicable to the community-notification statute because law-enforcement agencies already possess the relevant information pursuant to A.R.S. sections 13–3821 and 41–1750. Community notification would not work any significant increase in the likelihood of apprehension; thus it has a negligible impact on this deterrence rationale. Further, even if a statute serves to deter, such does not compel the conclusion that the statute is impermissibly punitive; deterrence may serve a civil goal, and because a sanction is tied to a criminal activity does not make the sanction punitive. *Ursery,* 518 U.S. at ——, 116 S.Ct. at 2149; *Roe,* 125 F.3d at 55; *Russell,* 124 F.3d at 1089, 1091.

■ "[W]hether a sanction constitutes punishment is not determined from the [offender's] perspective, as even remedial sanctions carry the 'sting of punishment.'" *Department of Revenue of Montana v. Kurth Ranch,* 511 U.S. 767, 777 n. 14, 114 S.Ct. 1937, 1945, 128 L.Ed.2d 767 (1994); *see Hendricks,* —— U.S. at ——, 117 S.Ct. at 2086 (civil commitment of violent sex offenders does not constitute punishment); *Ursery,* 518 U.S. at ——, ——, 116 S.Ct. at 2138, 2149 (civil forfeiture does not comprise punishment even if the value of the forfeited property arguably is excessive);[7] *Flemming,* 363

---

7. While the Court in *Ursery* analyzed the federal

Double Jeopardy Clause, there never has been a

U.S. at 616, 80 S.Ct. at 1375 (termination of Social Security benefits); *Hawker v. People of State of New York,* 170 U.S. 189, 18 S.Ct. 573, 42 L.Ed. 1002 (1898) (revocation of professional license). If there is, as Falcone and Brumett claim and we do not doubt, embarrassment in being the subject of a sex-offender notice, to suffer humiliation is not punishment even when, unlike Falcone and Brumett, the person named is innocent. *See Paul v. Davis,* 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976). The "sting" of notification, as a challenge to a "reputational interest," is not a concern of constitutional magnitude. *Id.* at 713, 96 S.Ct. at 1166. As the Third Circuit said in *E.B.,* 119 F.3d at 1099–1100:

> Public shaming, humiliation and banishment all involve more than the dissemination of information.... [T]hese colonial practices inflicted punishment because they either physically held the person up before his or her fellow citizens for shaming or physically removed him or her from the community.
>
> The "sting" of Megan's Law for [registrants for whom disclosure is beyond that to law-enforcement agencies] results not from their being publicly displayed for ridicule and shaming but rather from the dissemination of accurate public record information about their past criminal activities and a risk assessment by responsible public agencies based on that information. This distinction makes a substantial difference when one looks for the relevant historical understanding of our society. Dissemination of information about criminal activity has always held the potential for substantial negative consequences for those involved in that activity. Dissemination of such information in and of itself, however, has never been regarded as punishment when done in furtherance of a legitimate governmental interest.
>
> When there is probable cause to believe that someone has committed a crime, our law has always insisted on public indictment, public trial, and public imposition of sentence, all of which necessarily entail public dissemination of information about the alleged activities of the accused.... Wholly independent of the criminal sanctions that conviction may entail, the consequences of our law requiring this public dissemination of information can be severe. In every case, a conviction becomes a matter of public record.... Nevertheless, our laws' insistence that information regarding criminal proceedings be publicly disseminated is not intended as punishment and has never been regarded as such.

 The Ninth Circuit approved the above-quoted judgment of the Third Circuit when it analyzed the Washington statute similar to the Arizona law, adding:

> Other historical analogies are also instructive. It is at least as appropriate to compare the notification law to "wanted" posters and warnings about escaped prisoners or other dangerous persons—practices that have not been regarded as punishment, though they disclose essentially the same information, may rouse public excitement, and may carry a greater risk of vigilantism.

*Russell,* 124 F.3d at 1091–92.[8]

### 5. Behavior Already Criminal

The behavior that triggers the community-notification statute is the offender's release from prison and subsequent relocation within Arizona, neither of which is a crime.

### 6. Alternative Purpose to Punishment

This element relates to the existence of a non-punitive or alternative purpose rationally related to the statute. *See Flemming,* 363 U.S. at 615, 80 S.Ct. at 1375; *Trop v. Dulles,* 356 U.S. 86, 95–96, 78 S.Ct. 590, 595–96, 2 L.Ed.2d 630 (1958). As discussed above, the

---

suggestion that the meaning of "punishment" is different from that relevant to an analysis of the Ex Post Facto Clause.

**8.** The real parties in interest complain of possible vigilantism, but, as the Ninth Circuit also pointed out, we cannot consider potential illegal respons-

es. *Russell,* 124 F.3d at 1092, 1093 n. 10. We trust that offenders, like every other member of society, will be able to depend upon law-enforcement agencies to protect them from unlawful activity.

non-punitive purpose of the community-notification statute, both by its terms and according to the legislative history, is protection of the community.

### 7. Excessive in Relation to Alternative Purpose

Our analysis of the *Mendoza–Martinez* factors is completed by assessing whether the statute is an excessive means by which to accomplish the goal of protecting the community from sex offenders, and we conclude that it is not. The court in *Noble* recognized that the registration requirement serves a valuable regulatory purpose. 171 Ariz. at 177–78, 829 P.2d at 1223–24. The community-notification statute does not operate as an affirmative disability or restraint. The complaints of Falcone and Brumett that to be the subjects of law-enforcement fliers would be humiliating and prompt vigilante activity have been rejected. Instead, as much as possible, the community-notification statute is sensitive concerning the varying degrees of risk presented by different offenders by tailoring the dissemination of information to the jeopardy posed. A.R.S. § 13–3826(E).[9]

### CONCLUSION

Examining the legislative intent and the *Mendoza–Martinez* factors, we conclude that

the overriding purpose of the community-notification statute is protecting the community from sex offenders, a purpose unrelated to punishing Falcone and Brumett. Accordingly, we accept jurisdiction and grant relief.

Judge Dann misapplied the law and abused his discretion in enjoining the application of the sex-offender community-notification statute to Falcone and Brumett. We direct him to lift the injunction, and we further direct him to withdraw his order to show cause as to why this case should not be certified as a class action. This case is remanded to the superior court for such further proceedings as are warranted.

On our own motion, we also dismiss the companion appeal, *Falcone v. State*, 1 CA–CV 97–0553.

RYAN, P.J., and KLEINSCHMIDT, J., concur.

---

**9.** Judge Dann found in A.R.S. section 13–3825(H) an "especially pernicious" grant of "carte blanche" authority to law-enforcement agencies "to give public notice 'of any circumstances or persons that pose a danger to the community under circumstances that are not provided for in this section.'" We agree with the petitioners that the judge misread the statute. Section 13–3825(H) provides that the community-notification statute "does not prohibit law enforcement officers from giving a community notice of any circumstances or persons that pose a danger to the community under circumstances that are not provided for under this section." This subsection grants no additional authority to that conferred under the remainder of section 13–3825. Rather, it is formulaic language designed to avoid misconstruction of the statute and clarify that the statute is not the exclusive procedure for community notification. Other states have included similar clauses in their community-notification laws, which have been approved by the courts upon the same rationale. *E.g., Roe,* 125 F.3d 47 ("Nothing in this section ... shall be construed to prohibit a ... probation officer acting in the performance of his duties and within the scope of his employment from *disclosing any information concerning the* ... probationer to any person whenever he deems such disclosure to be appropriate."); *E.B.,* 119 F.3d 1077 (upholding New Jersey's community-notification statute, which includes a provision that "[n]othing in this act shall be construed to prevent law enforcement officers from providing community notification concerning any person who poses a danger under circumstances that are not provided for in this act.").