NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

BRIAN M. BENAVIDEZ, *Plaintiff/Appellant*,

*v.*

ARIZONA BOARD OF EXECUTIVE CLEMENCY, et al.,
*Defendants/Appellees.*

No. 1 CA-CV 21-0737
FILED 12-20-2022

Appeal from the Superior Court in Maricopa County
No. CV 2021-004459
The Honorable James D. Smith, Judge (Retired)

**AFFIRMED**

COUNSEL

Michael P. Denea PLC, Phoenix
By Michael P. Denea
*Counsel for Plaintiff/Appellant*

Arizona Attorney General's Office, Phoenix
By Kelly Gillilan-Gibson
*Counsel for Defendants/Appellees*

---

## MEMORANDUM DECISION

Judge Jennifer B. Campbell delivered the decision of the Court, in which Presiding Judge Brian Y. Furuya and Judge Paul J. McMurdie joined.

---

**C A M P B E L L**, Judge:

¶1        Brian M. Benavidez appeals from the superior court's order denying his request for special-action relief. He argues the court abused its discretion by denying the relief requested because the Arizona Board of Executive Clemency (Board) exceeded its authority, violated his due process rights, and violated ex post facto principles. As Benavidez has shown no error, we affirm.

## BACKGROUND

¶2        In the winter of 1989, Benavidez was on felony probation requiring abstinence from alcohol. Benavidez agreed to babysit his girlfriend's three-year-old son, Tommy,[1] even though he admitted being "hungover" and may have been consuming alcohol that day.[2] Benavidez concedes he was "frustrated" when he decided to bathe the child. He ran the bath water, walked away, and when he returned, plunged the child into the water without checking the temperature. Tommy began screaming immediately. By the time Benavidez pulled the child out of the scalding bath water, the boy's skin was bright red and blistering. Benavidez did not seek medical care, but instead dressed Tommy and continued with other domestic tasks. The child continued to show signs of distress, and Benavidez eventually applied aloe vera to his blistering skin but did nothing more. When Tommy's mother returned home, she was alarmed by her son's condition. Benavidez tried to dissuade her from taking Tommy to

---

[1]        We use a pseudonym to protect the victim.

[2]        Benavidez's version of events has changed with almost every retelling since his arrest, including at trial and parole application hearings. For instance, Benavidez did not acknowledge he had been drinking until he went before the Board for the first time. We review the record in the light most favorable to upholding the superior court's decision. *Motel 6 Operating Ltd. P'ship v. City of Flagstaff*, 195 Ariz. 569, 571, ¶ 7 (App. 1999).

the hospital, because he was afraid his probation officer would find out he had been drinking and had injured the child.

¶3            Once at the hospital, Benavidez continued to downplay the extent of Tommy's injuries as "no big deal." His contentions were belied by the injuries and the doctor's determination that Tommy was in "very, very critical" condition. The child was airlifted to a burn trauma center, where he remained for months. Tommy survived the ordeal only because of experimental skin grafts and intensive medical care that continued into adulthood.

¶4            After a jury trial, Benavidez was convicted of child abuse, a dangerous crime against children in the first degree, committed while on probation. *See* A.R.S. §§ 13-604.01, -604.02(A) (1989). He was sentenced to life imprisonment without possibility of parole for 25 years. After serving 25 years, Benavidez began applying for parole. He has applied for parole five times and has been denied in each instance.

¶5            On his most recent application in 2020, Benavidez's counsel argued for release on parole, citing factors including continuing education and religious studies, family support, "employment as a welder, and staying actively involved in AA." At the hearing, Benavidez testified, providing yet another version of the crime. He went on to espouse his dedication to changing his life. The Board also heard from Tommy and his family, who again asked the Board to deny Benavidez release on parole.

¶6            Before voting, one board member emphasized Benavidez's lack of "accountab[ility] for a heinous crime against a child[,]" and noted "his story did not present as credible[.]" Noting their "agree[ment]" on the record, two members added their thoughts: one objected to Benavidez blaming alcohol; and the other observed, "I [] don't feel it's in the best interest of the public to release him out at this time . . . ." The last voting member stated he saw no reason to grant parole based on the information presented.

¶7            With its fifth member abstaining because she was late to the hearing, the Board otherwise unanimously voted to deny release on parole. In its written findings, the Board explained,

> The Board believes that you would not remain at liberty
> without violating the law for the following reasons: age of the
> victim[,] poor criminal history[,] serious and violent offense[,]
> serious bodily injury[,] trauma to the victim[,] violated
> previous probation/parole[.]

Benavidez sought special-action relief from the superior court. He argued the Board abused its discretion, violated his right to due process, and violated constitutional prohibitions on ex post facto application of the law. Accepting jurisdiction, the superior court denied Benavidez's petition. Benavidez timely appealed.

## DISCUSSION

¶8 The superior court reviews Board decisions only to ensure that the "requirements of due process have been met and that the [Board] has acted within the scope of its powers." *Cooper v. Ariz. Bd. of Pardons & Paroles*, 149 Ariz. 182, 184 (1986). Courts are not a "super-parole board." *Borchers v. Ariz. Bd. of Pardons & Paroles*, 174 Ariz. 463, 468 (App. 1992); *see also Cooper*, 149 Ariz. at 184. In turn, we review the superior court's denial of special-action relief for abuse of discretion, reviewing questions of law de novo. *See Hormel v. Maricopa County*, 224 Ariz. 454, 458, ¶ 16 (App. 2010). We begin by considering whether the Board (1) exceeded its authority or (2) violated Benavidez's due process rights, and finally (3) we examine if the Board applied a law retrospectively.

## I.      The Board Acted Within Its Authority

¶9 Benavidez argues the superior court mischaracterized the Board's discretion and erroneously allowed consideration of "static and unchangeable" factors in denying him parole. Under the 1989 version of A.R.S. § 31-412(A), relevant to Benavidez's application, if an applicant is eligible for parole, "the board of pardons and paroles shall authorize the release of the applicant upon parole if . . . it appears to the board, *in its sole discretion*, that there is a substantial probability that the applicant will remain at liberty without violating the law." A.R.S. § 31-412 (1989) (emphasis added). We first consider the scope of the Board's discretion and then the factors applied in Benavidez's case.

### A.      The Board's Discretion

¶10 Benavidez argues the Board erroneously exercised "unfettered discretion" when denying him parole. As support, he cites *Stewart v. Arizona Board of Pardons & Paroles*, 156 Ariz. 538 (App. 1988), arguing this case ushered in an "extraordinary change" in the scope of the Board's discretion, requiring the court to discard all prior case law. *See id.* at 542 (finding the Board lacked any authority to *rescind* its earlier decision granting parole when a member changed his mind). Based on this decision, he argues the Board's discretion is limited to determining whether the

4

statutory criteria have been met, not whether to grant release on parole. We disagree.

¶11　　　　"The critical determination the Board must make under A.R.S. § 31-412(A) is whether 'there is a substantial probability that the applicant will remain at liberty without violating the law.'" *Borchers*, 174 Ariz. at 467. "By giving the Board sole discretion in making this determination, the legislature has set forth such a broad panoply of criteria that it hardly curtails the Board's discretion at all." *Id.* (internal quotation and citation omitted). This discretion necessarily allows the Board to weigh any relevant factor in reaching its conclusion. *See Stinson v. Ariz. Bd. of Pardons & Paroles*, 151 Ariz. 60, 61 (1986).

¶12　　　　In this instance, the Board "believe[d] that [Benavidez] would not remain at liberty without violating the law for [six enumerated] reasons." *Cf. Stewart*, 156 Ariz. at 542 (presuming release on parole only upon *a finding* that the "statutory criteria . . . *are satisfied*" (emphasis added)); *see also* A.R.S. § 31-411(B), (G) (affording parole-eligible inmates an opportunity to be heard and written explanation of the Board's rationale for denial). That finding being sufficient, the Board denied Benavidez parole. While Benavidez may disagree with the Board's decision, this court cannot reweigh the facts presented or replace the Board's decision with our own. *See Stinson*, 151 Ariz. at 61; *Stewart*, 156 Ariz. at 540 ("The legislature intended to give the Board 'sole discretion' to determine whether to grant or deny parole." (quoting A.R.S. § 31-412(A)); *see also Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 13–14 (1979) (affirming "very broad discretion" vested in parole boards). We find no error in the Board's determination or the superior court's affirmation of that decision.

### B.　　The Board is Exempt From Formal Rulemaking Requirements

¶13　　　　Benavidez next asserts that to "limit[] the focus of" the Board's discretion, it must "adopt a set of rules and guidelines, along with implementing specialized training for Board members." His argument lacks support in the law. The Board is exempt from formal rulemaking when issuing "[r]ule[s] or substantive policy statement[s] concerning inmates." A.R.S. § 41-1005(A)(7); *see also* A.R.S. § 41-1005(A)(4) (exempting rules "concerning only the internal management of an agency that do[] not *directly and substantially affect the procedural or substantive rights or duties* of any segment of the public" (emphasis added)). Attempting to circumvent this explicit grant of authority, Benavidez argues that the Board must follow the rulemaking procedure in A.R.S. §§ 41-1021 to -1029 "because [his

requested] rules would affect members of the public, including victims, witnesses, members of prosecutorial and law enforcement agencies, and [others]." The superior court found this interpretation "would render [the exemption] meaningless" since "[n]early anything affecting a convicted criminal would affect the public's rights." We agree.

**¶14** The Board has sole discretion in making parole decisions and is not constrained by rulemaking requirements. *See Stinson*, 151 Ariz. at 61. Neither this court nor the superior court can compel the Board to adopt rules. The superior court did not abuse its discretion in declining to compel the Board to engage in a formal rulemaking process.

### C. Relevant Factors Considered

**¶15** Benavidez also argues the Board improperly used "static and unchangeable factors" that were "not clearly and logically connected" to whether he would remain at liberty without violating the law. *See* A.R.S. § 13-412(A) (1989). Instead, he argues the Board is limited "to substantive issues directly bearing on [that criterion]," such as his conduct during incarceration and response to prior denials of parole. *But see Cooper*, 149 Ariz. at 185 (noting the Board must evaluate "what the entire record shows up to the time of the sentence" (quotation omitted)).

**¶16** The Board must consider the static information, such as the severity of the initial offense, as well as the additional information developed since the processing of the last parole hearing. *See id.* Parole-release decisions are "necessarily subjective and predictive." *Bd. of Pardons v. Allen*, 482 U.S. 369, 371 (1987). "[T]he decision to release an inmate is, in a sense, an 'equity' type judgment that cannot always be articulated in traditional findings." *Cooper*, 149 Ariz. at 185 (citation and quotation omitted); *see also Greenholtz*, 442 U.S. at 8, 15. Whether a prospective parolee will remain law-abiding if released is difficult to predict. *See Cooper*, 149 Ariz. at 185 (contemplating "a discretionary assessment of a multiplicity of imponderables" (quotation omitted)).

**¶17** Benavidez argues the Board wrongfully used "static factors": "child victim, extent of the injury, position of trust, on probation at the time of the offense." It is of no consequence that these factors are "static"—they provide the basis for which he was incarcerated and sentenced to life imprisonment. *See Borchers*, 174 Ariz. at 467–68 (affirming denial based on "generic" and fixed reasons). The Board properly considered "the age of the victim[,] poor criminal history[,] serious and violent offense[,] serious bodily injury[,] trauma to the victim[, and] violated previous

probation/parole." *See id.* at 468 ("[F]actors of past criminal history and seriousness of the offense bear upon the probability of a parole applicant successfully completing parole.").

**¶18** Benavidez would prefer that the Board consider only his "good prison record, completion of treatment-related programming, . . . strong family and financial support, etc." But the Board is not confined to his revisionist history, and consideration that the victim was a toddler in Benavidez's care who suffered serious life-threatening physical injuries and permanent disfigurement remains relevant to the decision before the Board. *See Cooper*, 149 Ariz. at 185 & n.4 (finding "gravity of the offense" includes "victim information" (emphasis omitted)). Having relied on the record and binding case law, the superior court did not abuse its discretion by finding the Board acted within its authority when denying Benavidez's release on parole.

## II.      Benavidez Received Proper Due Process

**¶19** Next, Benavidez argues the superior court and Board violated the state and federal due process rights that arise from his protected liberty interest in release on parole. *See* Ariz. Const. art. 2, § 4; U.S. Const. amend. XIV, § 1. There is no constitutional right to be released from prison before the expiration of a lawfully imposed sentence. *Greenholtz,* 442 U.S. at 7. However, "state statutes may create liberty interests in parole release that are entitled to protection under the Due Process Clause." *Allen*, 482 U.S. at 371, 377–78 (using "shall . . . if" language); *see also Greenholtz*, 442 U.S. at 11–12 (using "shall . . . unless" language). The mandatory language in A.R.S. § 31-412(A) creates such an interest. *See Stewart*, 156 Ariz. at 542; *see also* A.R.S. § 31-412(A) (stating "the [Board] *shall* authorize the release of the applicant upon parole *if* . . . ." (emphasis added)).

**¶20** Benavidez argues that he has a protected interest "in *actual release* on parole . . . , *if [he] can demonstrate* there is a substantial probability that he will remain at liberty without violating the law." (Emphasis added.) We agree that Benavidez has a liberty interest and must be afforded due process, but a liberty interest in release does not equate to a right to release from incarceration. *See Stewart*, 156 Ariz. at 542–43. Nor does denying an application for parole equate to a due process violation. The "fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *Samiuddin v. Nothwehr*, 243 Ariz. 204, 211, ¶ 20 (2017) (citation and quotation omitted); *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976).

**¶21** On appeal, Benavidez claims the superior court "utterly failed to address the due process implications of [his] liberty interest."[3] The superior court noted that Benavidez "had an opportunity to be heard and received written explanations of the Board's decisions."[4] On this basis, the court "reject[ed]" any "broader deprivation of due process." "[D]ue process is flexible and calls for such procedural protections as the particular situation demands." *Mathews*, 424 U.S. at 334; *see, e.g.*, *Stewart*, 156 Ariz. at 543 (recognizing spectrum ranging from "*the minimum notice and hearing for an inmate awaiting a grant of parole*" to "the full panoply of *Morrissey* protections for revocation" (emphasis added)).

**¶22** Under A.R.S. § 31-411, inmates eligible for parole are entitled to (1) an opportunity to be heard and (2) a written explanation of the Board's rationale for the denial. *See* A.R.S. § 31-411(B), (G).[5] Benavidez does not dispute that the Board provided him with an opportunity to be heard and a written decision explaining why his application was denied. *See Cooper*, 149 Ariz. at 185–86 (finding hearing and written explanation of denial satisfied due process). Contrary to Benavidez's claim that due process compels "substantive limits" (i.e., "rules," "guidelines," and "specialized training") on the Board's discretion, "[t]he Constitution does not require more." *Greenholtz*, 442 U.S. at 13–16. Given this, we find the Board afforded Benavidez proper due process when denying his application for release on parole.

---

[3] Benavidez also suggests that "the length of [his] incarceration up to this point" exacerbates the Board's alleged due process violation. But Benavidez was sentenced to life imprisonment *with the possibility of parole* at a criminal trial with the full panoply of due process protections. *See Borchers*, 174 Ariz. at 469. His incarceration to date is not relevant to any liberty interest in a possible, but uncertain, release. *See Foggy v. Ariz. Bd. of Pardons & Paroles*, 108 Ariz. 470, 472 (1972) ("[P]arole is a matter of grace and not a matter of right.").

[4] The superior court implicitly recognized a liberty interest in release on parole. *See Stewart*, 156 Ariz. at 543 (discussing what process was due only after recognizing a protected interest). Given this, the superior court's failure to explicitly discuss a protected liberty interest was immaterial. *See Cooper*, 149 Ariz. at 184 (emphasizing judicial review is limited "to insur[ing] that the requirements of due process have been met").

[5] Absent material changes after the relevant dates, we cite a statute's current version.

## III.     The Board Did Not Violate the Ex Post Facto Clause

**¶23**          Finally, Benavidez argues the Board violated the ex post facto clauses of the state and federal constitutions by considering a later-adopted "open-ended" parole criterion, specifically "the best interests of the state." *See* U.S. Const. art. I, § 9; Ariz. Const. art. II, § 25; *see also* A.R.S. § 1-246 ("When the penalty for an offense is prescribed by one law and altered by a subsequent law, . . . the offender shall be punished under the law in force when the offense was committed."). We review ex post facto issues de novo. *See State v. Henry*, 224 Ariz. 164, 166, ¶ 5 (App. 2010).

**¶24**          As relevant here, a law violates the ex post facto clauses if it "changes the punishment, and inflicts a greater punishment, than the law annexed to the crime, when committed." *Calder v. Bull*, 3 U.S. 386, 390 (1798); *see also Henry*, 224 Ariz. at 167, ¶ 7 (applying the third *Calder* category). At the time of Benavidez's offense, A.R.S. § 31-412(A) directed the Board to grant parole to eligible applicants if, in its sole discretion, there was "a substantial probability that the applicant [would] remain at liberty without violating the law." A.R.S. § 31-412(A) (1989). This statute was later amended to require the Board to formally consider whether "release is in the best interests of the state." 1994 Ariz. Sess. Laws, ch. 188, § 2; *see also* A.R.S. § 31-412(A).

### A.     No Retroactive Application of the Law Occurred

**¶25**          To begin, we address whether the Board applied the "best interests" standard when denying Benavidez parole. *See Ariz. Dep't of Pub. Safety v. Superior Court*, 190 Ariz. 490, 494 (App. 1997) (requiring a retroactive application for an ex post facto violation). Because he raises a question of fact rather than law, we review the superior court's findings for an abuse of discretion. *See Motel 6 Operating Ltd. P'ship v. City of Flagstaff*, 195 Ariz. 569, 571, ¶ 7 (App. 1999) (limiting de novo review to questions of law). As the superior court noted, one board member stated his belief that parole was "not in the best interest of the public." The court also noted no other members joined in this remark, nor was it a factor reflected in the Board's final decision denying parole. The "individual intention" of board members is not controlling. *See Stewart*, 156 Ariz. at 541 (citation omitted); *cf. United Calif. Bank v. Prudential Ins. Co. of Am.*, 140 Ariz. 238, 308 (App. 1983) (looking to the written record, not oral ruminations, in reviewing hearing proceedings).

**¶26**          Benavidez's ex post facto claim fails absent a retroactive application of the law. *See Weaver v. Graham*, 450 U.S. 24, 29 (1981) (noting

retroactivity is a "critical element[]"). The court did not abuse its discretion in concluding the Board had not retroactively applied the "best interests of the state" criterion based on a single remark from a sole Board member.

### B.     No Significant Risk of Increased Duration of Incarceration

¶27     Even if we assume the Board applied the "best interest" criterion, Benavidez's ex post facto argument still fails. He argues the Board's application of the "best interests of the state" criterion "effectively cause[d] [his] presumption of release to disappear within the vastness of unfettered discretion." To this end, Benavidez argues that the application of the "best interests" criterion both (1) "unquestionably" decreased his odds of release on parole, and (2) "egregious[ly] increase[d] . . . the quantum of punishment." He argues that while the "remain at liberty" criterion is "manageably connected" to "a prisoner's conduct," the "best interests" standard is "so broad as to allow any decision on any ground." But here, the Board listed six reasons for denial, each supported by the record and tethered to his risk of reoffending. *See Borchers*, 174 Ariz. at 468 (affirming denial based on two reasons "bear[ing] upon the probability of . . . successfully completing parole"). Benavidez does not identify which of the six enumerated grounds the Board improperly considered. *See Calif. Dep't of Corr. v. Morales*, 514 U.S. 499, 509 (1995) (rejecting "speculative and attenuated possibility . . . of increasing the measure of punishment").

¶28     Even if the entire Board considered the later-adopted criterion, Benavidez fails to demonstrate how that application "materially alter[ed] the situation . . . to his disadvantage" or deprived him of a "substantial right involved in his liberty." *See State ex rel. Gonzalez v. Superior Court*, 184 Ariz. 103, 105 (App. 1995); *Henry*, 224 Ariz. at 172 (finding sex-offender registration scheme was a "nonpunitive civil regulation"). Contrary to Benavidez's claim that it is irrelevant whether a law "even remotely increased the actual punishment," he must show a changed parole policy "creates a *significant risk* of prolonging [his] incarceration." *See Garner v. Jones*, 529 U.S. 244, 251 (2000) (emphasis added). He has failed to do so here.

¶29     Finally, we note that the amended version of A.R.S. § 31-412(A) is not "substantively different" as Benavidez alleges. Pre-amendment, the Board implicitly considered the good of society; post-amendment, it must explicitly consider the state's best interests. *Compare Cooper*, 149 Ariz. at 185, *with* A.R.S. § 31-412(A). Given the Board's pre-existing discretion to weigh any factors relevant to an applicant's risk of

reoffending, there is no ex post facto violation here. *See Garner*, 529 U.S. at 252 (declining to "micromanage[]" ever-evolving parole procedures).

**¶30** In sum, the superior court did not abuse its discretion in concluding the Board did not apply the "best interests of the state" criterion in reaching its decision. In any event, Benavidez has failed to show A.R.S. § 31-412(A)'s "best interests of the state" criterion "creates a significant risk of prolonging [his] incarceration," and his ex post facto argument fails as a result.

## CONCLUSION

**¶31** For the reasons above, we affirm the superior court's order denying special-action relief. Benavidez requests his attorney's fees under Rule 21 of the Arizona Rules of Civil Procedure and A.R.S. § 12-348. Because Benavidez has not "prevail[ed] by an adjudication on the merits," we decline to award fees. *See* A.R.S. § 12-348.



AMY M. WOOD • Clerk of the Court
FILED:   AA