240 P.3d 279

**STATE of Arizona, Appellee,**

v.

**Kimberly SIMMONS, Appellant.**

**No. 1 CA–CR 09–0463.**

Court of Appeals of Arizona, Division 1, Department E.

Sept. 28, 2010.

Terry Goddard, Attorney General By Kent E. Cattani, Chief Counsel, Criminal Appeals Section/Capital Litigation Section and Joseph T. Maziarz, Assistant Attorney General, Alice Jones, Rule 38(e) Student, Phoenix, Attorneys for Appellee.

Phillips & Associates, PC By Lawrence Magid, Peoria, Attorneys for Appellant.

## OPINION

OROZCO, Judge.

¶ 1 Kimberly Simmons (Defendant) appeals her convictions and sentences for two counts of aggravated driving or actual physical control of a motor vehicle while under the influence of intoxicating liquor or drugs (Aggravated DUI), a class four felony. For the following reasons, we affirm.

### FACTS AND PROCEDURAL HISTORY

¶ 2 When reviewing the record, "we view the evidence in the light most favorable to supporting the verdict." *State v. Torres–Soto,* 187 Ariz. 144, 145, 927 P.2d 804, 805 (App.1996). A grand jury indicted Defendant on two counts of Aggravated DUI and one count of leaving the scene of a damage accident relating to an incident on January 18, 2008. At a bench trial, Defendant conceded that she:

> was involved in an accident while she was operating a motor vehicle and had a blood [alcohol] level of .08 or higher which is what the charge is. And that also that [sic] while she was operating that motor vehicle it impaired her ability to drive at least to the slightest degree.

According to Defendant, the only issue left for trial was "whether or not the State ha[d] evidence to show, to prove beyond a reason-

able doubt that [Defendant] fit[ ] within the statute of operating a motor vehicle while her license [was] canceled, suspended or revoked."

¶ 3 Only one witness testified at trial, M.P., Deputy Custodian of Records, Investigator III for the Arizona Department of Motor Vehicles (MVD). M.P. testified that MVD never issued Defendant an Arizona driver's license; MVD only issued Defendant an identification card. M.P. reviewed Defendant's motor vehicle records from other states, including North Carolina and West Virginia. Regarding Defendant's record from North Carolina, M.P. testified that on January 18, 2008, Defendant's privilege to drive[1] in the state of North Carolina was "[s]uspended."

¶ 4 M.P. also testified that, on January 18, 2008, the date of the incident, Defendant's West Virginia driver's license was "expired," and not suspended, canceled, or revoked. MVD records from West Virginia indicate from November 5, 1999 to July 15, 2005, Defendant's driver's license was in a period of "mandatory revocation-conviction." The record also indicates although the revocation was lifted, West Virginia never reissued Defendant a new license. As a result, on January 18, 2008, Defendant's West Virginia driver's license remained expired.

¶ 5 After hearing the evidence, the trial court found Defendant guilty as charged. Defendant filed a timely notice of appeal. We have jurisdiction pursuant to Article 6, Section 9, of the Arizona Constitution and Arizona Revised Statutes (A.R.S.) sections 12–120.21.A.1 (2003), 13–4031 and –4033.A.1 (2010).[2]

## DISCUSSION

¶ 6 Defendant argues she did not fit within the elements of the statute under which she was convicted, A.R.S. § 28–1383.A.1 (Supp. 2009). She also argues the trial court erred in finding her West Virginia license or privilege to drive was suspended, canceled, re-

voked or refused. Specifically, Defendant contends that in applying A.R.S. § 28–1383.-A.1, courts must look only to Arizona or a defendant's licensing state. In part, A.R.S. § 28–1383.A.1 provides that a person is guilty of Aggravated DUI if the person "[c]ommits a violation of § 28–1381, § 28–1382 or this section while the person's driver license or privilege to drive is suspended, canceled, revoked or refused."

¶ 7 We review issues of statutory interpretation de novo. See State v. Gomez, 212 Ariz. 55, 56, ¶ 3, 127 P.3d 873, 874 (2006). "In any case involving statutory interpretation we begin with the text of the statute" because it is "the best and most reliable index of a statute's meaning." State v. Christian, 205 Ariz. 64, 66, ¶ 6, 66 P.3d 1241, 1243 (2003). "When the plain text of a statute is clear and unambiguous there is no need to resort to other methods of statutory interpretation to determine the legislature's intent because its intent is readily discernable from the face of the statute." Id. "But, if 'the statute's language is not clear, we determine legislative intent by reading the statute as a whole, giving meaningful operation to all of its provisions, and by considering factors such as the statute's context, subject matter, historical background, effects and consequences, and spirit and purpose.'" State v. Payne, 223 Ariz. 555, 561, ¶ 16, 225 P.3d 1131, 1137 (App.2009) (quoting Zamora v. Reinstein, 185 Ariz. 272, 275, 915 P.2d 1227, 1230 (1996)).

¶ 8 We have previously held that the predecessor statute to A.R.S. § 28–1383 "applies to persons whose out-of-state licenses have been suspended, cancelled, or revoked by the issuing state." State v. Kozlowski, 143 Ariz. 137, 139, 692 P.2d 316, 318 (App.1984). In Kozlowski, we relied on the chapter's definition of "license," which "means any license ... issued under the laws of this state or any other state pertaining to the licensing of persons to operate motor vehicles." Id. at 138, 692 P.2d at 317 (quoting 1983 Ariz. Sess.

---

1. Defendant's North Carolina driving record does not indicate she was ever issued a North Carolina driver's license; her record indicates only that at the time of Defendant's arrest in Arizona, her North Carolina privilege to drive was suspended for driving while impaired.

2. Unless otherwise specified, we cite to the current versions of the applicable statutes because no revisions material to this opinion have since occurred.

Laws, ch. 279, § 4 (1st Reg.Sess.)). Like its predecessor, A.R.S. § 28–1383 necessarily turns on the chapter's definition of "license." Because this definition remains unchanged, we decline to depart from our previous holding in *Kozlowski* and conclude that A.R.S. § 28–1383 applies to out-of-state licenses that have been "suspended, canceled, revoked or refused." *See* A.R.S. § 28–1301.6 (Supp. 2009).

¶ 9 In this case, Defendant's West Virginia license was the only license issued to her. At the time of the accident, her West Virginia license was not "suspended, canceled, revoked or refused," instead it was expired. *See* A.R.S. § 28–1383.A.1. Defendant therefore argues that because her West Virginia license was not "suspended, canceled, revoked or refused," she did not violate A.R.S. § 28–1383.A.1. Defendant, however, ignores the remainder of A.R.S. § 28–1383.A.1. It provides, in part, that a person "[c]ommits a violation of § 28–1381, § 28–1382 or this section while the person's driver license *or privilege to drive* is suspended, canceled, revoked or refused." A.R.S. § 28–1383.A.1 (emphasis added).

¶ 10 Accordingly, if on January 18, 2008, Defendant's "privilege to drive" was suspended, canceled, revoked or refused, then Defendant was properly convicted. The trial court found that Defendant's privilege to drive in North Carolina was revoked at the time of the offense. Defendant does not challenge this finding; however, our review does not end here. Defendant may be convicted only if the "privilege to drive" element of A.R.S. § 28–1383 also applies to an out-of-state privilege to drive.

¶ 11 Like our interpretation of the section's "license" element, we interpret the section's "privilege to drive" element to apply to an out-of-state privilege to drive. Because the drafters plainly defined "license" to include a license issued by another state, we cannot say the drafters intended to limit A.R.S. § 28–1383's "privilege to drive" element to the state of Arizona. *See Bills v. Ariz. Prop. & Cas. Ins. Guar. Fund,* 194 Ariz. 488, 494, ¶ 18, 984 P.2d 574, 580 (App.

1999) (stating that in order to harmonize statutes, "[w]e must construe these provisions together, in the context of the overall statutory scheme, and aim to achieve consistency among them").

¶ 12 This interpretation is consistent with other provisions of the same statutory scheme. *See* A.R.S. §§ 28–1851 to –1855 (2004) (adopting the Driver License Compact). Specifically, the Driver License Compact requires that:

> The licensing authority in the home state, for the purposes of suspension, revocation or limitation of the license to operate a motor vehicle, shall give the same effect to the conduct reported, pursuant to article III of this compact, as it would if such conduct had occurred in the home state.

A.R.S. § 28–1852 (2004). In adopting the Driver License Compact, it was the policy of each participating state[3] to:

> Make the reciprocal recognition of licenses to drive and eligibility therefore more just and equitable by considering the overall compliance with motor vehicle laws, ordinances and administrative rules and regulations as a condition precedent to the continuance or issuance of any license by reason of which the licensee is authorized or permitted to operate a motor vehicle in any of the party states.

A.R.S. § 28–1852.I(b)(2). Accordingly, in an effort to harmonize related statutes within Title 28, and in an attempt to give effect to the legislature's intent, we interpret A.R.S. § 28–1383's "privilege to drive" element to apply to an out-of-state privilege to drive.

¶ 13 Defendant relies on *State v. Johnston,* 152 Ariz. 273, 731 P.2d 638 (App.1987), for the proposition that the trial court must only look to her home state (in this case Arizona and West Virginia) in determining whether she is guilty of Aggravated DUI. In *Johnston,* the defendant was prosecuted for "driving a motor vehicle while under the influence of intoxicating liquor while his operator's or chauffer's license was suspended, cancelled, rejected, or refused," based on the fact that his Colorado driver's license had been re-

---

3. Both North Carolina and West Virginia are participating states. N.C. Gen.Stat. § 20–4.21 to –4.30 (2009); W.Va.Code § 17B–1A–1 to –2 (2010).

voked. The defendant, however, also held a valid Montana driver's license at the time of the offense. *Id.* at 275, 731 P.2d at 640. Although Montana could have revoked the defendant's license based on the revocation in Colorado, it failed to do so. *Id.* We held that a person could not be convicted under A.R.S. § 28–1383's predecessor statute when "a person's license remains valid until the driver is properly notified of the revocation and provided with an opportunity for hearing." *Id.* at 276, 731 P.2d at 641. Unlike the defendant in *Johnston,* however, Defendant did not possess a valid driver's license at the time of the offense. In this case, her license from West Virginia was expired and her "privilege to drive" had been revoked in North Carolina. As a result, our holding in *Johnston* is inapplicable here.

¶ 14 As previously mentioned, Defendant does not challenge the trial court's finding that her North Carolina privilege to drive was revoked at the time of the offense. Nevertheless, Defendant argues the trial court erred in finding her West Virginia license was "cancelled," as opposed to "expired." Even assuming the trial court erred in this respect, we "will not reverse a conviction if

an error is clearly harmless." *State v. Doerr,* 193 Ariz. 56, 64, ¶ 33, 969 P.2d 1168, 1176 (1998). "Error is harmless if we can say beyond a reasonable doubt that it did not affect or contribute to the verdict." *Id.* In this case, as the trial court correctly pointed out, its analysis "focused on the privilege to drive language in 28–1383." So even though the trial court misstated the status of Defendant's West Virginia license, that error did not affect or contribute to the verdict because Defendant's privilege to drive had been revoked in North Carolina.

## CONCLUSION

¶ 15 For the reasons previously stated, we affirm Defendant's convictions and sentences.

CONCURRING: MAURICE PORTLEY and DIANE M. JOHNSEN, Judges.