IN THE

# ARIZONA COURT OF APPEALS
DIVISION TWO

---

THE STATE OF ARIZONA,
*Appellee*,

*v.*

LYNN LAVERN BURBEY,
*Appellant*.

No. 2 CA-CR 2015-0300
Filed August 31, 2016

---

Appeal from the Superior Court in Pima County
No. CR20144529001
The Honorable Scott Rash, Judge

**AFFIRMED**

---

COUNSEL

Mark Brnovich, Arizona Attorney General
Joseph T. Maziarz, Section Chief Counsel, Phoenix
By Colby Mills, Assistant Attorney General, Phoenix
*Counsel for Appellee*

Dean Brault, Pima County Legal Defender
By Robb P. Holmes, Assistant Legal Defender, Tucson
*Counsel for Appellant*

---

**OPINION**

Judge Espinosa authored the opinion of the Court, in which Presiding Judge Howard and Judge Staring concurred.

---

E S P I N O S A, Judge:

## Introduction

**¶1**        After a jury trial, convicted sex offender Lynn Lavern Burbey was found guilty of failing to report his change of address in violation of A.R.S. § 13-3822(A).  On appeal, he argues the trial court erroneously instructed the jury both on his obligation to report his whereabouts and his intent to commit the offense, violating his due process rights and requiring that his conviction be vacated.  Because we conclude the jury instructions accurately stated the law as to the reporting obligation § 13-3822(A) imposes on sex offenders who become homeless, and because no fundamental error resulted from the lack of a mens rea instruction, we affirm.

## Factual and Procedural Background

**¶2**        We view the facts in the light most favorable to sustaining the jury's verdict. *State v. Dann*, 205 Ariz. 557, n.1, 74 P.3d 231, 236 n.1 (2003).  Upon his release from prison in an unrelated matter, Burbey registered as a sex offender with the Pima County Sheriff's Office pursuant to the requirements of A.R.S. § 13-3821.  Burbey listed as his address the halfway house in Tucson where he resided while he completed his term of community supervision.  After his discharge from the halfway house five months later, Burbey became homeless.  He did not notify the sheriff's department after leaving the halfway house, nor did he update his residential status as a transient, within seventy-two hours as provided by § 13-3822(A).

**¶3**        In October 2014 a Tucson Police Department officer questioned Burbey outside a convenience store.  Burbey informed

the officer he was homeless and living in the area, and admitted he had not yet reported his change of residence as required. Several days later Burbey was again contacted by a Tucson police detective, at which time he again acknowledged knowing that he needed to report his change in residential status and that he still had not done so. Burbey was arrested and subsequently indicted for failing to give notice of a change of address, a class four felony in violation of § 13-3822(A).

¶4　　At trial, the jury heard evidence from the Pima County Sheriff's Department employee who had registered Burbey upon his release from prison, the officer who had spoken with him outside the convenience store in October 2014, and the detective who had arrested him several days later. Burbey did not introduce any evidence, but argued in closing that despite his admissions about failing to notify the sheriff's department after he left the halfway house, he had complied with the requirements of the statute by informing the officers he came in contact with that he was homeless and living in the area. Burbey was convicted as noted above and sentenced to a mitigated seven-year prison term. We have jurisdiction over his appeal pursuant to A.R.S. §§ 12-120.21(A)(1), 13-4031, and 13-4033(A)(1).

## Sex Offender Registration

¶5　　Section 13-3822(A) requires registered sex offenders, within seventy-two hours of "moving from the person's residence," to "inform the sheriff in person and in writing of the person's new residence [or] address." The statute also imposes on individuals without permanent residences a duty to register with the sheriff "as a transient not less than every ninety days." *Id.*[1] Because Burbey

---

[1]The relevant portion of § 13-3822(A) provides:

> Within seventy-two hours, excluding weekends and legal holidays, after moving from the person's residence within a county or after changing the person's name, a person who is required to register under this article shall inform the sheriff in

became homeless when he left the halfway house and had no residence or "new mailing address to register with the sheriff," he argues he was only obliged to register as a transient every ninety days. The trial court, however, instructed the jury that registered sex offenders must report a change of residence within seventy-two hours, which Burbey argues was a misstatement of the law constituting fundamental error.

**¶6**     The state initially argues that, because Burbey requested the instruction he now contests, he invited the error and may not challenge the instruction on appeal. *See, e.g.*, *State v. Logan*, 200 Ariz. 564, ¶ 9, 30 P.3d 631, 632-33 (2001) (noting appellate courts will not find reversible error where complaining party invited the error). Both Burbey and the state submitted alternative jury instructions regarding the elements of the offense, and the trial court incorporated elements of each into the instruction it read to the jury.[2]

---

> person and in writing of the person's new residence, address or new name. If the person moves to a location that is not a residence and the person receives mail anywhere, including a post office box, the person shall notify the sheriff of the person's address. If the person has more than one residence or does not have an address or a permanent place of residence, the person shall register as a transient not less than every ninety days with the sheriff in whose jurisdiction the transient is physically present.

Section 13-3822(D) defines "residence" as "the person's dwelling place, whether permanent or temporary."

[2]The final jury instruction read as follows:

> The crime of failure to notify change of address requires proof that the defendant:  1. is required to register; *and* 2. moved; *and* 3. failed to notify in writing

Because the portion of the instruction Burbey challenges was requested by the state, we conclude Burbey did not invite the error. *See id.* ¶ 11 (noting purpose of invited error doctrine is to prevent a party from injecting error in the record and profiting from it on appeal); *State v. Thues*, 203 Ariz. 339, n.2, 54 P.3d 368, 369 n.2 (App. 2002) (refusing to apply invited error doctrine where record did not reflect which party proposed stipulation which was source of error); *cf. Gaston v. Hunter*, 121 Ariz. 33, 41, 588 P.2d 326, 334 (App. 1978) (finding acceptance of ruling with "uncharacteristic acquiescence and meekness" did not rise to the level of invited error). Burbey's acquiescence to the jury instruction, however, requires that we review only for fundamental error. *See State v. Dann*, 220 Ariz. 351, ¶ 51, 207 P.3d 604, 617 (2009) (jury instructions not objected to at trial reviewed for fundamental error). Fundamental error is that which goes to the foundation of the case, error that takes away a right essential to the defense, or error of such magnitude that the defendant could not have possibly received a fair trial. *State v. Henderson*, 210 Ariz. 561, ¶ 19, 115 P.3d 601, 607 (2005).

¶7 The state alternatively argues that the language of § 13-3822(A) "plainly manifests the legislative intent to require *all* changes to a permanent address—including going from a house to being homeless—be reported within [seventy-two] hours," and imposes on homeless sex offenders an additional, rather than superseding, obligation "to inform the sheriff's department of his or

---

and in person the Sheriff of Pima County within seventy-two hours of moving. If a person who is required to register has more than one residence or does not have a permanent place of residence, the person shall provide a description and physical location of any temporary residence and shall register as a transient not less than every ninety days with the sheriff in whose jurisdiction the transient person is physically present.

her continued presence in the county every ninety days." Burbey argues to the contrary, asserting such an interpretation makes "little sense" because the residential status of homeless offenders remains "uncertain" and "subject to change," and "[u]nder the plain language of the statute" Burbey was required only to "register his homeless status every [ninety] days."

¶8　　　In addressing competing interpretations of a statute, we first look to its text and intent. *See State v. Simmons*, 225 Ariz. 454, ¶ 7, 240 P.3d 279, 280 (App. 2010). When the plain text of the statute is clear and unambiguous, there is no need to resort to other methods of statutory interpretation to determine the legislature's intent. *State v. Christian*, 205 Ariz. 64, ¶ 6, 66 P.3d 1241, 1243 (2003). Burbey argues that § 13-3822(A), as applicable to sex offenders, "plainly" covers two classes of individuals—those with residences who change their residence, and those who are homeless—and he points out the statute imposes a different time requirement on each of these classes: seventy-two hours for persons who change residences, and ninety days for homeless persons. But there is no basis for assuming these provisions are mutually exclusive, nor does Burbey offer any, and his interpretation is at odds with common sense. Under the statute, the action of "moving" from a registered residence triggers the seventy-two hour notification requirement, whether the destination is permanent or temporary. And the separate requirement that a homeless person "register as a transient not less than every ninety days" does not, by its plain terms, apply to, contradict or modify the requirement of informing the sheriff of the initial "move" within seventy-two hours.

¶9　　　But even if we were to assume, arguendo, that the statute's language is susceptible to confusion, the standard tools of statutory interpretation would refute Burbey's claims. If a statute is subject to more than one reasonable interpretation, courts will consider "the context of the statute, the language used, the subject matter, its historical background, its effect and consequences, and its spirit and purpose." *State ex rel. Polk v. Campbell*, 239 Ariz. 405, ¶ 5, 372 P.3d 929, 930 (2016), *quoting Ariz. Citizens Clean Elections Comm'n*, 234 Ariz. 322, ¶ 11, 322 P.3d 139, 142 (2014). A review of the statutory history here reveals no previous exceptions to the

change-of-residence reporting obligation. Since the first sex offender registration duty was codified in 1951, all persons required to register under the statute have been compelled to "promptly inform the sheriff" of a change in address. *See* 1951 Ariz. Sess. Laws, ch. 105, § 1. In 1995, an explicit ten-day grace period was provided, 1995 Ariz. Sess. Laws, ch. 257, § 4, which was replaced in 2001 with the current seventy-two hour requirement, 2001 Ariz. Sess. Laws, ch. 109, § 3.[3] A 2005 amendment clarified that formal notification was required for anyone who changes their "residence," not just their address, and defined residence broadly as "the person's dwelling place, whether permanent or temporary." 2005 Ariz. Sess. Laws, ch. 282, § 4. A 2006 amendment added the requirement that homeless individuals report their transient status not less than every ninety days, but left in place the requirement that "moving" from a registered address be reported within seventy-two hours. 2006 Ariz. Sess. Laws, ch. 184, § 2. Finding no exceptions to the longstanding requirement that the sheriff be promptly notified of address changes, there is no basis for imputing one not explicitly adopted by the legislature. *See Greenlee County v. Laine*, 20 Ariz. 296, 299, 180 P. 151, 152 (1919) (generally, where no exception articulated in statute, "none will be made by mere implication or construction").

**¶10**　　　　Second, statements of legislative intent support the conclusion that § 13-3822 requires prompt notification of all changes in residence. *See, e.g.*, *Estate of Braden ex rel. Gabaldon v. State*, 228 Ariz. 323, ¶ 8, 266 P.3d 349, 351 (2011) (goal in interpreting statutes is to give effect to the intent of the legislature). Indeed, the 2001 amendment, replacing the previous ten-day reporting period with the current seventy-two hours, was made "because of the difficulty in tracking transients for registration purposes." S. Judiciary Comm. Minutes, 45th Leg., 1st Reg. Sess. (Ariz. Mar. 30, 2001). As our supreme court has observed, the legislature's "overriding purpose" in enacting Arizona's sex offender registration statutes is to "facilitat[e] the location of child sex offenders by law enforcement personnel." *State v. Noble*, 171 Ariz. 171, 178, 829 P.2d 1217, 1224

---

[3]The seventy-two hour grace period excludes weekends and legal holidays. § 13-3822.

(1992); *see also Ariz. Dep't of Pub. Safety v. Superior Court*, 190 Ariz. 490, 495, 949 P.2d 983, 988 (App. 1997) (finding "ample indication" state legislature "intended to protect communities" through sex offender registration and community notification statutes). [4] Requiring that all changes to registered addresses be communicated within seventy-two hours best comports with the stated goal of the statutory scheme.

¶11 Burbey points out that a purpose of the 2006 amendment adopting the ninety-day reporting period was to ease compliance for homeless persons. Indeed, while the amendment was being debated, the House sponsor recognized the burdensome obligation on individuals without a permanent residence, explaining that the amendment "arose because of the challenge of homeless sex offenders complying with the registration laws," and that "[i]t creates a way for them to stay in compliance." H. Judiciary Comm. Minutes, 47th Leg., 2d Reg. Sess. (Ariz. Mar. 3, 2006).

¶12 Emphasizing that policy, Burbey argues "the registration of every particular location at which an offender is regularly present is not feasible, and would lead to multiple and often meaningless registrations." He further asserts, "[a] transient offender may occupy many locations on a more or less regular basis during the course of a day, week, or month," and "a good faith effort to comply with the literal terms of the statute would clog the registration system." But that argument is unfounded because nothing in the statute requires that a homeless person re-register "every particular location," but only a change from a previously registered address. *See* § 13-3822. For the same reason, we reject Burbey's contention, based on the same premise, that the statute is

---

[4] A similar sentiment was echoed by Governor Janet Napolitano following her approval of the 2006 amendment, explaining that the purpose of requiring "[s]ex offenders without a physical address . . . to register every 90 days, rather than annually" was because "frequent registration requirements will give law enforcement a better idea of where they can be found on a regular basis." Governor's Message, 47th Leg., 2d Reg. Sess. (Ariz. Sept. 21, 2006).

unconstitutionally vague. And he points to no evidence, nor makes any persuasive argument, that requiring individuals who leave a registered address to notify the sheriff that they have become homeless would "clog" the registration system.

**¶13** Most importantly, Burbey's interpretation would contravene the legislative intent that communities be protected by tracking the whereabouts of sex offenders as closely as reasonably practicable. *See Noble*, 171 Ariz. at 178, 829 P.2d at 1224 (purpose of registration statute to facilitate location of sex offenders); *Ariz. Dep't of Pub. Safety*, 190 Ariz. at 495, 949 P.2d at 988 (sex offender registration is a means of protecting communities); *State v. Lammie*, 164 Ariz. 377, 382-83, 793 P.2d 134, 139-40 (App. 1990) (sex offender registration is investigative tool for law enforcement), *disagreed with on other grounds by State v. Peek*, 219 Ariz. 182, 195 P.3d 641 (2008). Notwithstanding any policy of facilitating compliance by homeless individuals, interpreting the 2006 amendment as Burbey suggests would allow an individual who becomes homeless after residing at a registered address to essentially "slip through the cracks" and disappear from law enforcement surveillance until that person registers as a transient, up to ninety days later. Such a reading clearly contravenes the fundamental purpose of the statutory scheme. *See* A.R.S. § 1-211(B) ("Statutes shall be liberally construed to effect their objects and to promote justice."); *cf. State v. Pinto*, 179 Ariz. 593, 596, 880 P.2d 1139, 1142 (App. 1994) ("When statutory language gives rise to different interpretations . . . we will adopt the interpretation that is most harmonious with the statutory scheme and legislative purpose.").

**¶14** Accordingly, we conclude that § 13-3822(A), while imposing on homeless registrants a reporting obligation not less than every ninety days so long as the person remains homeless, *also* plainly requires that all registrants, including those who become homeless, notify the sheriff, in person and in writing, within seventy-two hours of moving from a previously registered address. Because the trial court's jury instruction accurately stated the law's reporting requirement, there was no error.

**Knowledge as Element of Offense**

**¶15** Burbey next argues that the lack of a mens rea requirement in the jury instruction "omitted an essential element of the offense resulting in fundamental error" depriving him of his due process rights. He specifically contends that "U.S. Supreme Court and Arizona case law requires a culpable mental state for status offenses such as failure to register," and argues that omitting that element from the offense of failure to notify a change of address renders it a "strict liability crime," which "goes to the foundation of the case," requiring reversal. Burbey concedes, however, that because he did not object at trial, we review for fundamental error. *See State v. Fimbres*, 222 Ariz. 293, ¶ 36, 213 P.3d 1020, 1030 (App. 2009).

**¶16** As previously noted, fundamental error is that which "goes to the foundation of [the] case, takes away a right that is essential to [the] defense, and is of such magnitude that [defendant] could not have received a fair trial." *Henderson*, 210 Ariz. 561, ¶ 24, 115 P.3d at 608. Under fundamental error review, an appellant must also establish prejudice. *Id.* ¶ 20. We review issues of law underlying jury instructions, however, de novo. *State v. Hausner*, 230 Ariz. 60, ¶ 107, 280 P.3d 604, 627 (2012).

**¶17** Section 13-3822(A) lists no mental state for a violation of its provisions. Under such circumstances, the Arizona Legislature has provided that "no culpable mental state is required for the commission of such offense . . . unless the proscribed conduct necessarily involves a culpable mental state." A.R.S. § 13-202(B). Statutory registration requirements, however, are one context where reviewing courts have under certain circumstances required proof of a mens rea to sustain a conviction. *See, e.g.*, *Lambert v. California*, 355 U.S. 225, 229-230 (1957) (reversing conviction for failing to register as a felon where actual knowledge of duty to register was not shown); *State v. Garcia*, 156 Ariz. 381, 384, 752 P.2d 34, 37 (App. 1987) (overturning failure to register as sex offender conviction where record devoid of evidence of actual knowledge of duty to re-register).

¶18　　Citing *Garcia* and *Lambert*, Burbey asserts "there is no meaningful distinction" between the offense of failing to register as a sex offender and the offense of failing to update registration information for which he was convicted. He argues that "while he knew registration was required, he did not know exactly what was required of him to comply with the statute." He thus contends the holding of *Garcia*, which applied an actual knowledge requirement for a violation of the initial registration requirement under § 13-3821, should be extended to require the same mens rea element for § 13-3822 violations. *See Garcia*, 156 Ariz. at 383, 752 P.2d at 36. The state responds that "the Legislature purposefully created strict liability" for § 13-3822 offenses, and asserts that Burbey's "neglect and inaction in this case is precisely the type of conduct deemed appropriate for strict liability," citing cases from several other jurisdictions.[5]

¶19　　We note that the reporting obligation imposed by § 13-3822 implicates a much different situation than those addressed in *Garcia* and *Lambert*. To violate § 13-3822, one must have already completed the initial registration pursuant to § 13-3821. And that procedure typically conveys notice of the requirements of § 13-3822. Indeed, evidence introduced at Burbey's trial showed that at the time he registered, he was informed both in writing and verbally of the ongoing obligations of a registered sex offender, including the reporting duties codified in § 13-3822. Thus, the lack of notice and knowledge dispositive to the holdings in *Garcia* and *Lambert* is absent here.

¶20　　That being the case, we need not resolve whether the absence of a mens rea requirement in § 13-3822 or corresponding

---

[5] *See, e.g., State v. T.R.D.*, 942 A.2d 1000, 1020 (Conn. 2008) (concluding "the crime of failing to comply with the sex offender registry requirements is a strict liability offense"); *State v. Abshire*, 677 S.E.2d 444, 449 (N.C. 2009) (failure to notify sheriff of sex offender's change of address constitutes strict liability offense); *see also People v. Patterson*, 708 N.Y.S.2d 815, 818 (N.Y. Crim. Ct. 2000) (applying strict liability to failure-to-register offenses provided sex offender has been given notice of his obligation to register).

instructions to the jury may be violative of due process. *See State v. Rios*, 225 Ariz. 292, ¶ 12, 237 P.3d 1052, 1056 (App. 2010) (we avoid deciding constitutional issues when appeal can be resolved on narrower grounds). Even if the jury here was not instructed on an element of the offense, Burbey has not shown any prejudice. *See Neder v. United States*, 527 U.S. 1, 8-9 (1999) (instructional error on element of offense subject to harmless error review); *Henderson*, 210 Ariz. 561, ¶¶ 19-20, 115 P.3d at 607 (where no objection at trial, defendant must establish prejudice); *State v. Hunter*, 142 Ariz. 88, 90, 688 P.2d 980, 982 (1984) (appellant must demonstrate how faulty jury instruction prejudiced him, even where constitutional violations alleged).

**¶21**        The record contains overwhelming evidence of Burbey's awareness of his obligations as a registered sex-offender and how to comply with them. *See State v. Gallegos*, 178 Ariz. 1, 11, 870 P.2d 1097, 1107 (1994) (no prejudice given "[o]verwhelming evidence in the record" of defendant's knowledge and intent). In particular, Burbey initialed provisions on his original registration document that stated "I understand upon changing my residence and/or my name within the county, I am required to inform the Sheriff of the county in person within seventy-two (72) hours," and "I understand that if I do not have an address or permanent place of residence (homeless), I must register my **physical** location (i.e. crossroads) every 90 days with the Sheriff in whose jurisdiction I am physically present." The sheriff's department employee who had registered Burbey testified that he "specifically" tells registrants that "the only reason why they have to come into us is if they change their address." He further clarified the obligation "to come to us" includes "going from an actual address to a homeless situation" which is made "clear" to the registrants.

**¶22**        Further, when Burbey was contacted by law enforcement officers, he admitted, on two separate occasions, that he had failed to notify the sheriff's department as required, and expressly acknowledged to the first officer his duty to report his change of residence within 72 hours. Contrary to his argument on appeal, Burbey presented no evidence, and there is none in the record, to support his claim that he was unaware of the statute's

specific requirements, how to comply with them, or that he had believed acknowledging those requirements to law enforcement officers fulfilled his reporting duty. Thus, neither the lack of, nor the giving of, a mens rea instruction would have influenced the verdict or caused Burbey any prejudice, and cannot constitute fundamental error in this case.

## Conclusion

**¶23** For the foregoing reasons, we conclude that § 13-3822 requires registered sex-offenders who become homeless to notify the sheriff within seventy-two hours of moving from their registered address. And, when a registrant has notice and is aware of this obligation, any due process concern based on whether the statute creates a strict liability offense cannot form the basis for fundamental error. Accordingly, Burbey's conviction and sentence are affirmed.