NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee*,

*v.*

GABRIEL MACIAS, *Appellant*.

No. 1 CA-CR 15-0505
FILED 4-25-2017

Appeal from the Superior Court in Yuma County
No. S1400CR201400522
The Honorable John Neff Nelson, Retired Judge

**AFFIRMED IN PART; REVERSED IN PART; AND VACATED IN PART**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Michael T. O'Toole
*Counsel for Appellee*

Debus, Kazan & Westerhausen, Ltd., Phoenix
By Tracey Westerhausen
*Co-Counsel for Appellant*

Ballecer & Segal, LLP, Phoenix
By Natalee E. Segal
*Co-Counsel for Appellant*

---

**MEMORANDUM DECISION**

Presiding Judge Kenton D. Jones delivered the decision of the Court, in which Judge Patricia K. Norris and Judge Paul J. McMurdie joined.

---

**J O N E S,** Judge:

**¶1**      Gabriel Macias appeals his convictions and sentences for one count of sexual assault (Count Two); one count of sexual abuse (Count Three); four counts of child molestation (Counts Four, Seven, Eleven, and Seventeen); seven counts of furnishing harmful items to minors (Counts Five, Eight, Ten, Thirteen, Fourteen, Fifteen, and Nineteen); one count of child prostitution (Count Six); one count of sexual conduct with a minor (Count Twelve); one count of sexual exploitation of a minor (Count Eighteen); and one count of aggravated assault with sexual motivation (Count Twenty).[1] Macias argues the trial court erred by denying a motion to suppress, failing to properly instruct the jury, denying motions for judgment of acquittal, admitting improper and prejudicial evidence, and permitting duplicitous charges. He also contends the prosecutor engaged in impermissible vouching during closing argument.[2]

**¶2**      For the following reasons, we reverse the conviction and sentence imposed on one count of furnishing harmful items to minors (Count Five), and vacate the convictions and sentences for one count of sexual assault and one count of sexual abuse. We affirm the convictions and sentences on the fourteen remaining counts.

---

[1]     Two additional counts of child molestation were dismissed for insufficient evidence, and the jury acquitted Macias of a second count of sexual exploitation of a minor.

[2]     Despite receiving three extensions of time to do so, Macias' counsel failed to timely file a reply brief. We therefore decline to consider any responsive arguments made therein.

## FACTS[3] AND PROCEDURAL HISTORY

¶3        Macias taught fourth, fifth, and sixth grades and sex education classes from 2003 to 2006.  In 2013, one of Macias' former students reported to police that Macias had touched him inappropriately when he was a student.  During the subsequent investigation, the police located other former students who also reported being touched inappropriately by Macias.  Several of these victims also reported Macias showed them pornographic material at his home.

¶4        The police executed a search warrant on Macias' home and seized adult pornographic VHS tapes; compact discs containing both adult pornography and a pornographic video of a child performing a sex act on an adult; *Playboy* and *Maxim* magazines; a college paper written by Macias that discussed sex in ancient Greek society between older men and young men in a positive light; and a computer that contained: (1) nude videos of Macias and E.V. as a young teenager; (2) inappropriate chat messages between Macias and E.V.; and (3) two computer diary entries, titled "Losing [E.V.]," detailing Macias' emotional turmoil after E.V.'s parents discontinued contact between them.  Following his arrest, Macias granted the police access to his iPhone, which contained videos of E.V. masturbating and a video of Macias masturbating while whispering, "I love you [E.V.]. This is only for you."

¶5        Macias was ultimately convicted of the seventeen counts identified in ¶ 1, *supra*.  The trial court sentenced Macias to a term of life imprisonment without the possibility of release for thirty-five years for sexual conduct with a minor and to consecutive and concurrent presumptive prison terms totaling an additional 114.25 years for all remaining counts.  Macias timely appealed.  This Court has jurisdiction under Arizona Revised Statutes (A.R.S.) sections 12-120.21(A)(1),[4] 13-4031, and -4033(A).

---

[3]        "We view the facts in the light most favorable to sustaining the jury's verdict[s]."  *State v. Burbey*, 240 Ariz. 496, 498, ¶ 2 (App. 2016) (citing *State v. Dann*, 205 Ariz. 557, 562 n.1, ¶ 1 (2003)).

[4]        Absent material changes from the relevant date, we cite a statute's current version.

## DISCUSSION

### I.     Motion to Suppress

¶6        Macias argues the trial court erred in denying his motion to suppress the items seized from his home because the information within the affidavit supporting issuance of the warrant was stale, as the described offenses had occurred more than seven years earlier.  We generally review a trial court's ruling on a motion to suppress for an abuse of discretion, but review constitutional and purely legal issues *de novo*.  *State v. Moody*, 208 Ariz. 424, 445, ¶ 62 (2004) (citing *State v. Prion*, 203 Ariz. 157, 160, ¶ 14 (2002), and then *State v. Davolt*, 207 Ariz. 191, 201, ¶ 21 (2004)).  In doing so, "we consider only evidence presented at the suppression hearing and view the facts in the light most favorable to sustaining the trial court's ruling."  *State v. Dean*, 241 Ariz. 387, 388, ¶ 2 (App. 2017) (quoting *Brown v. McClennen*, 239 Ariz. 521, 523, ¶ 4 (2016)).

¶7        The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures," and accordingly provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."  U.S. Const. amend. IV.  "Probable cause to conduct a search exists when 'a reasonably prudent person, based upon the facts known by the officer, would be justified in concluding that the items sought are connected with criminal activity and that they would be found at the place to be searched.'"  *State v. Spears*, 184 Ariz. 277, 285 (1996) (quoting *State v. Carter*, 145 Ariz. 101, 110 (1985)).  In short, the totality of the circumstances must create a fair probability evidence of a crime will be found in the place to be searched.  *See, e.g.*, *Illinois v. Gates*, 462 U.S. 213, 238 (1983).  The exclusionary rule, recognized by the U.S. Supreme Court, generally bars the introduction of evidence obtained in violation of these principles.  *See Herring v. United States*, 555 U.S. 135, 139 (2009) (citing *Weeks v. United States*, 232 U.S. 383, 398 (1914)); *Mapp v. Ohio*, 367 U.S. 643, 655 (1961) (extending exclusionary rule to the states).

¶8        Once issued, a search warrant is presumed valid, and a defendant challenging it for lack of probable cause has the burden of establishing its invalidity.  *See State v. Crowley*, 202 Ariz. 80, 83, ¶ 7 (App. 2002) (citing *Greehling v. State*, 136 Ariz. 175, 176 (1983), and then *Franks v. Delaware*, 438 U.S. 154, 171-72 (1978)).  "Reasonable minds frequently may differ on the question whether a particular affidavit establishes probable cause."  *United States v. Leon*, 468 U.S. 897, 914 (1984) (citations omitted).

Therefore, deference is shown the issuing judge's conclusion that probable cause exists. *Id.* Thus, a finding of probable cause will be upheld whenever there is a "substantial basis for concluding that a search would uncover evidence of wrongdoing." *Gates*, 462 U.S. at 236-37 (quoting *Jones v. United States*, 362 U.S. 257, 271 (1960), and then *United States v. Harris*, 403 U.S. 573, 577-83 (1971)); *see also State v. Hyde*, 186 Ariz. 252, 272 (1996) (citing *Massachusetts v. Upton*, 466 U.S. 727, 728 (1984)). A substantial basis for a search exists so long as the facts, "interpreted in a common-sense and realistic fashion," make it "not unreasonable . . . to conclude" evidence of a crime may be found in a given location. *State v. McCall*, 139 Ariz. 147, 156-57 (1983) (citing *State v. Adamson*, 136 Ariz. 250, 258 (1983), and *State v. Watson*, 113 Ariz. 218, 220 (1976)).

¶9        But probable cause to justify a search warrant for evidence must exist at the time the warrant issued. *State v. Hale*, 131 Ariz. 444, 446 (1982) (citing *State v. Kasold*, 110 Ariz. 563, 566 (1974), and then *United States v. Harris*, 482 F.2d 1115, 1117 (3d Cir. 1973)). "[T]here is no arbitrary time limit on how old the factual information contained in the affidavit may be[; t]he question of staleness depends more on the nature of the activity than on the number of days that have elapsed since the factual information was given." *Id.* (citations omitted). "Where facts are indicated so that the magistrate may conclude that the activity is of a continuous nature or in a course of conduct, the passage of time becomes less significant." *State v. Smith*, 122 Ariz. 58, 60 (1979) (citing *State v. Torrez*, 112 Ariz. 525, 528 (1974)). Thus, probable cause does not necessarily dissipate when "the items in question [a]re of a kind not likely to be discarded by the defendant." *Id.* (citing *Kasold*, 110 Ariz. at 566).

¶10        Here, the police sought the warrant in connection with their investigation into offenses of child molestation and furnishing harmful items to minors. The affidavit in support of the warrant recounted the investigation undertaken and detailed the statements of three victims describing a pattern of behavior over a period of years from 2003 to 2006: Macias would invite the students over to his home to swim and then engage in mutual masturbation or the touching of their genitals. The victims further informed the police Macias showed them pornographic movies at his home, and, on at least one occasion, pornographic pictures on a computer. The affidavit also stated Macias was a teacher at the school the victims attended during the time period in question, had a home with a pool as described by the former students, and was currently employed as a third-grade teacher at a local school district.

¶11         Although the evidence of the offenses sought in this case —
pornographic movies on disks and VHS tapes and pictures and video files
on computers — are "not the type of evidence that rapidly dissipates or
degrades," *United States v. Seiver*, 692 F.3d 774, 777 (7th Cir. 2012)
("'Staleness' is highly relevant to the legality of a search for a perishable or
consumable object, like cocaine, but rarely relevant when it is a computer
file.") (quoting *United States v. Vosburgh*, 602 F.3d 512, 529 (3d Cir. 2010)),
the detective who prepared the affidavit did not state specific reasons why
he believed, seven years later, evidence of the offenses would be present at
Macias' home.   Distinct from many child pornography cases, where
collectors routinely demonstrate hoarding behavior "because of the great
personal value the images have for sexual gratification, the difficulty in
obtaining the images as a result of their illegality, and their value to other
collectors such that the images may be traded for new images," *United States
v. Carroll*, 750 F.3d 700, 704-05 (7th Cir. 2014) (citing cases that rejected a
staleness argument where years passed between information about child
pornography offenses and applications for search warrants), the detective
in the immediate case never identified this trait as typical of collectors of
child pornography, nor suggested Macias would demonstrate this
hoarding behavior.

¶12         Indeed, the detective never specified whether the evidence
sought was child or adult pornography, and if it were the latter, why Macias
would have hoarded otherwise readily available materials.  In the absence
of this information, we cannot say the issuing magistrate had sufficient
information to establish a substantial basis for finding probable cause
existed to search Macias' residence for otherwise unspecified pornographic
materials more than seven years after the alleged offenses occurred.  The
warrant was based on stale information and therefore invalid.

¶13         However, "[a] Fourth Amendment violation does not
mandate reflexive exclusion of evidence." *State v. Booker*, 212 Ariz. 502, 504,
¶ 12 (App. 2006) (citations omitted).  "Rather, the exclusionary rule has been
applied only to the circumstances in which its deterrent purpose is 'most
efficaciously served.'" *Id.* at 505, ¶ 13 (quoting *United States v. Calandra*, 414
U.S. 338, 348 (1974), and citing *Arizona v. Evans*, 514 U.S. 1, 11 (1995)).  Under
the good faith exception, the exclusionary rule does not prohibit admission
of the evidence if an officer reasonably relies on a subsequently invalidated
search warrant. *See Leon*, 468 U.S. at 922.

¶14          Nonetheless, there are "some circumstances [in which] the officer will have no reasonable grounds for believing that the warrant was properly issued." *Id.* at 922-23.  For example:

> (1) when a magistrate is misled by information that the affiant knew was false or would have known was false but for his or her reckless disregard for the truth; (2) when the issuing magistrate "wholly abandons" his or her judicial role; (3) when a warrant is based on an affidavit "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable"; and (4) when a warrant is "so facially deficient that the executing officers cannot reasonably presume it to be valid."

*Hyde*, 186 Ariz. at 273 (quoting *Leon*, 468 U.S. at 923).  Macias argues the second and third situations apply.

¶15          As to the second situation, "the issue is whether the evidence of the magistrate's conduct . . . indicates she abandoned her impartiality or was unable to act in a neutral and detached manner."  *Id.* at 274 (citing *United States v. Heffington*, 952 F.2d 275, 277-78 (9th Cir. 1991)).  To warrant exclusion of the evidence, the magistrate's conduct must exhibit "systemic or patent partiality" such that "the police knew or should have known that the magistrate was acting as a 'rubber stamp' for a police investigation."  *Id.* at 275 (citing *Aguilar v. Texas*, 378 U.S. 108, 111 (1964), and *United States v. Breckenridge*, 782 F.2d 1317, 1321 (5th Cir. 1986)).  Macias has proffered no evidence, either in the trial court or on appeal, suggesting the issuing magistrate displayed systemic partiality toward law enforcement that would justify application of the exclusionary rule.

¶16          Regarding the third situation, Macias relies upon *United States v. Hodson*, which held "it was unreasonable for the officer executing the warrant . . . to believe that probable cause existed to search [the defendant]'s computers for child pornography based solely on a suspicion . . . that [the defendant] had engaged in child molestation."  543 F.3d 286, 293 (6th Cir. 2008).  This conclusion rested upon the premise that a "faceless, nameless 'reasonably well trained officer' in the field, upon looking at th[e] warrant, would have realized that the search described (for evidence of the crime of child pornography) did not match the probable cause described (that evidence would be found of a different crime, namely, child molestation)." *Id.*

¶17 *Hodson* is readily distinguishable because the warrant in the present case was not limited to evidence of child molestation or abuse, but also sought evidence that Macias had furnished harmful items to minors. Items harmful to minors include "any material or performance which depicts or describes sexual activity," "[a]ppeals to the prurient interest," and has no "serious literary, artistic, political, or scientific value for minors." A.R.S. § 13-3501(1)-(2). Here, the affidavit detailed statements of three victims who reported Macias had shown them pornography as minors. These accounts did not specify whether child or adult pornography was involved, but either could have qualified as an item harmful to minors. *See* Black's Law Dictionary (10th ed. 2014) (defining pornography as "[m]aterial (such as writings, photographs, or movies) depicting sexual activity or erotic behavior in a way that is designed to arouse sexual excitement"). Thus, unlike *Hodson*, the officer in the present case acted reasonably in believing the search described (for pornographic materials) matched the probable cause described (that evidence would be found to support the crime of furnishing harmful items to minors).

¶18 Because law enforcement was entitled to rely in good faith upon a judicially authorized search warrant that sought evidence germane to the probable cause described, the trial court did not abuse its discretion in denying Macias' motion to suppress.

## II.    Jury Instructions

¶19 Macias argues he is entitled to a new trial on the sexual assault and sexual abuse counts because of an error in the jury instructions. The State concedes error, and we agree.

¶20 Both sexual assault and sexual abuse require a person commit a sexual act "without consent of that person." A.R.S. §§ 13-1404(A), -1406(A). An act is "without consent" if:

> (a) The victim is coerced by the immediate use or threatened use of force against a person or property[;]
>
> (b) The victim is incapable of consent by reason of mental disorder, mental defect, drugs, alcohol, sleep or any other similar impairment of cognition and such condition is known or should have reasonably been known to the defendant. For the purposes of this subdivision, "mental defect" means the victim is unable to comprehend the distinctively sexual nature of the conduct or is incapable of understanding or

8

exercising the right to refuse to engage in the conduct with another[;]

(c) The victim is intentionally deceived as to the nature of the act[; or]

(d) The victim is intentionally deceived to erroneously believe that the person is the victim's spouse.

A.R.S. § 13-1401(7).

**¶21**        The trial court, however, instructed the jury that a person acts "without consent" of another if the victim is "[a] person under the age of 18." This instruction is erroneous. *See State v. Getz*, 189 Ariz. 561, 564 (1997) ("'Without consent' is *not* defined as occurring because one is under eighteen."). And because the victim was under eighteen at the time of the offense, the jury could have errantly found, in following the instruction given, Macias acted "without consent" with respect to the sexual assault and sexual abuse counts based solely upon the victim's age. The erroneous instruction was not harmless, *see Dann*, 205 Ariz. at 565, ¶ 18 ("An error is harmless if it appears 'beyond a reasonable doubt that the error did not contribute to the verdict obtained.'") (quoting *Chapman v. California*, 386 U.S. 18, 24 (1967)), and Macias' convictions and sentences for sexual assault and sexual abuse are therefore vacated.

### III.    Duplicitous Indictment and Charges

**¶22**        Macias argues his convictions on six of the seven counts of furnishing harmful items to minors should be reversed because the State alleged and presented evidence of multiple items being furnished to the victims to support the convictions on each count, rendering the charges duplicitous. "Duplicity is a question of law we review *de novo*." *See State v. Ramsey*, 211 Ariz. 529, 532, ¶ 5 (App. 2005) (citing *State v. Carrasco*, 201 Ariz. 220, 223, ¶ 10 (App. 2001), and *State v. Tamplin*, 195 Ariz. 246, 247, ¶ 6 (App. 1999)).

**¶23**        An indictment that "charges 'two or more distinct and separate offenses'" in the same count is duplicitous. *State v. Klokic*, 219 Ariz. 241, 243, ¶ 10 (App. 2008) (quoting *State v. Schroeder*, 167 Ariz. 47, 51 (App. 1990), and citing *State v. Whitney*, 159 Ariz. 476, 480 (1989), and then Ariz. R. Crim. P. 13.3(a)). "When the text of an indictment refers only to one criminal act, but multiple alleged criminal acts are introduced to prove the charge," the situation is referred to as a duplicitous charge, rather than a duplicitous indictment. *Id.* at 244, ¶ 12. Both duplicitous indictments and

charges are prohibited because they may fail to give "adequate notice of the charge to be defended," present the "hazard of a non-unanimous jury verdict," or "make it impossible to precisely plead 'prior jeopardy in the event of a later prosecution.'" *Id.* (quoting *State v. Davis*, 206 Ariz. 377, 389, ¶ 54 (2003)).

¶24　　　　Macias contends the indictment is duplicitous because the challenged counts of furnishing harmful items to minors — Counts Five, Eight, Ten, Thirteen, and Fifteen — describe the harmful items as "Pornographic Movies" and Count Nineteen described the harmful items as "Photographs and Videos of Defendant's Genitals."　He argues it was error for the State to allege the harmful items by category rather than by single item.　We disagree.　Although the indictment does not specifically describe the exact items furnished to each victim, it does identify the date range and specific victim for each count.　Therefore, the allegations of the counts are sufficiently clear to allow for a "precise pleading of prior jeopardy," should the State attempt to re-prosecute Macias for the same offenses charged in the six counts.　*See Ramsey*, 211 Ariz. at 533, ¶ 9 (citations omitted).　Moreover, "a continuing scheme or course of conduct may properly be alleged in a single count." *Id.* at 534, ¶ 12 (quoting *State v. Via*, 146 Ariz. 108, 116 (1985)).　The indictment was not duplicitous on its face.

¶25　　　　Macias argues these same charges were duplicitous because the State offered evidence of multiple harmful items being furnished to the victims on multiple occasions, and, by doing so, deprived him of notice of the charges to be defended and created the risk of a non-unanimous jury verdict.　But, because Macias presented a global defense to the charges, denying altogether he furnished *any* harmful items to minors, he cannot show the prejudice necessary for reversal.　Under these circumstances, the case turns on credibility — whether the jury believed Macias or the victims.　Where the only real defense is credibility, the jury's verdict of guilt indicates a unanimous belief of the victim and rejection of the only defense offered. *See Schroeder*, 167 Ariz. at 53 (citing *People v. Winkle*, 206 Cal. Rptr. 726, 730 (Ct. App. 1990)); *Whitney*, 159 Ariz. at 480 (rejecting the argument that "the defendant [was] denied an essential right to his defense" when the indictment alleged an aggravated assault premised upon the "single act of chasing two girls" where the defendant presented a global defense denying the events ever took place).　Accordingly, Macias has failed to prove reversible error.

## IV.  Prosecutorial Vouching

**¶26**        Macias argues the prosecutor engaged in improper vouching. There are two forms of impermissible prosecutorial vouching: "(1) when the prosecutor places the prestige of the government behind its witness, and (2) where the prosecutor suggests that information not presented to the jury supports the witness's testimony." *State v. Bible*, 175 Ariz. 549, 601 (1993) (quotation and citation omitted).  "The first type of vouching involves personal assurances of a witness's veracity," and the second type involves "remarks that bolster a witness's credibility by reference to materials outside the record." *State v. King*, 180 Ariz. 268, 277 (1994) (quoting *United States v. Roberts*, 618 F.2d 530, 533 (9th Cir. 1980)).

**¶27**        Macias contends the prosecutor engaged in the second form during his closing argument.  Specifically, Macias asserts the prosecutor engaged in impermissible vouching by arguing the items seized during the search of Macias' home in 2013 supported the victims' testimony that Macias showed them pornography years before.  But the prosecutor was entitled to comment on materials admitted into evidence and argue reasonable inferences therefrom. *See, e.g.*, *State v. Blackman*, 201 Ariz. 527, 544, ¶ 71 (App. 2002) ("Although counsel may not comment on matters not in evidence before the jury, they may argue reasonable inferences from the evidence presented at trial.") (citations omitted).  Accordingly, the prosecutor's closing argument did not involve improper vouching.

## V.  Admissibility of Evidence

**¶28**        Macias challenges several rulings regarding the admissibility of evidence.  We review evidentiary rulings for an abuse of discretion and defer to the trial court's determination of relevance and unfair prejudice. *State v. Smith*, 215 Ariz. 221, 232, ¶ 48 (2007) (citations omitted).

### A.  Adult Pornography

**¶29**        Macias argues the trial court erred in admitting evidence of the adult pornography seized from his home during execution of the search warrant.  The evidence consisted of copies of *Playboy* and *Maxim* magazines and videos of adult pornography discovered on a computer and compact disks found in his home.  Macias contends the evidence was irrelevant and should have been precluded or limited pursuant to Arizona Rule of Evidence 404(b).

**¶30**          Generally, all relevant evidence is admissible. *See* Ariz. R. Evid. 402. Relevant evidence is that which "has any tendency to make a fact [of consequence in determining the action] more or less probable than it would be without the evidence." Ariz. R. Evid. 401. "This standard of relevance is not particularly high." *State v. Oliver*, 158 Ariz. 22, 28 (1988) (citing *United States v. Southland Corp.*, 760 F.2d 1366, 1376 (2d Cir. 1985), and *Carter v. Hewitt*, 617 F.2d 961, 966 (3d Cir. 1980)).

**¶31**          In contrast, "[i]rrelevant evidence is not admissible," Ariz. R. Evid. 402, and the trial court may still exclude otherwise relevant evidence if its probative value is substantially outweighed by the danger of unfair prejudice, Ariz. R. Evid. 403. Rule 404(b) further precludes evidence of "other crimes, wrongs, or acts," offered "to prove the character of a person in order to show action in conformity therewith." However, "other act evidence" may be admitted if the proponent has proven by clear and convincing evidence the person committed the other act; it is relevant to prove motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident; its relevance is not substantially outweighed by the potential for unfair prejudice; and the court provides a limiting instruction if requested. *State v. Anthony*, 218 Ariz. 439, 444, ¶ 33 (2008) (quoting Ariz. R. Evid. 404(b), and citing *State v. Terrazas*, 189 Ariz. 580, 582-83 (1997)).

**¶32**          Macias argues the adult pornography was irrelevant because the State could not show the materials were the same as those shown to the victims. Indeed, the oldest magazine was published in July 2009 and could not have been shown to the victims between 2003 and 2006. The magazines do not even meet the low bar for relevance, and the trial court erred in admitting them. However, the court could reasonably conclude the adult videos existed at the time of the offenses and were relevant to corroborate the victims' testimony that Macias possessed such videos and showed them to the victims at his home. *See State v. Crum*, 150 Ariz. 244, 247 (App. 1986) ("[T]he mere possession of pornographic or sexually oriented [materials] does not show an intention or propensity to violate the law. However, where there is evidence of the use of such [materials] in connection with the perpetration of the crime charged . . . such [materials] become relevant and are admissible.") (quoting *State v. Natzke*, 25 Ariz. App. 520, 522 (1976)); *see also State v. Mosley*, 119 Ariz. 393, 401 (1978) ("Generally, any evidence that substantiates the credibility of a prosecuting witness on the question of guilt is material and relevant, and may be properly admitted.") (citations omitted).

**¶33**      Macias also argues that even if otherwise admissible, the adult pornography should have been excluded as unfairly prejudicial. Relevant and material evidence will generally be harmful to a defendant, but it is only when evidence is unfairly prejudicial that it needs be excluded. *See State v. Schurz*, 176 Ariz. 46, 52 (1993). Unfair prejudice "has an undue tendency to suggest a decision on an improper basis, such as emotion, sympathy, or horror." *Id.* (quoting Fed. R. Evid. 403 comm. note). Because the trial court is in the best position to balance probative value against unfair prejudice, it is accorded "broad discretion in deciding the admissibility." *See State v. Harrison*, 195 Ariz. 28, 33, ¶ 21 (App. 1998) (citing *Via*, 146 Ariz. at 122). Therefore, on review, this Court "views the evidence in the 'light most favorable to its proponent, maximizing its probative value and minimizing its prejudicial effect.'" *Id.* (quoting *State v. Castro*, 163 Ariz. 465, 473 (App. 1989)).

**¶34**      Although none of the victims testified the adult pornography admitted was the actual pornography shown to them, we are satisfied beyond a reasonable doubt the evidence did not impact the verdict and therefore, any error was harmless. *See Dann*, 205 Ariz. at 565, ¶ 18. The key issue in harmless error analysis is "whether there is overwhelming additional evidence sufficient to establish the prosecution's case." *State v. Fulminante*, 161 Ariz. 237, 245 (1988) (citing *State v. Castaneda*, 150 Ariz. 382, 387 (1986), and *State v. Hensley*, 137 Ariz. 80, 88-89 (1983)). Additionally, we consider whether the erroneously admitted evidence was used as primary or material evidence, whether erroneously admitted evidence is merely cumulative of similar evidence received, and whether the jury argument was based upon tainted evidence. *State v. Romero*, 240 Ariz. 503, 508, ¶ 8 (App. 2016) (citing *Bible*, 175 Ariz. at 588, and 1 Jack B. Weinstein & Margaret A. Berger, *Weinstein's Federal Evidence* § 103.41[5] (2d ed. 2016)).

**¶35**      Here, five victims consistently testified Macias showed them pornography to groom them for sexual conduct. The State introduced the adult pornography to corroborate the testimony of those five witnesses, but it was the testimony itself that served as the State's primary evidence of many of the charged offenses. The adult pornography was therefore cumulative to the victims' testimony. Moreover, neither the juror questions nor the State's closing argument focused on the adult videos; in fact, the State addressed the marginal nature of the adult pornography in its closing, imploring the jury to instead focus upon the victims' testimony. We therefore find the erroneous admission of the adult pornography harmless.

B.     Pornography Titles

**¶36**     Macias argues he was unfairly prejudiced by the detective's reading of the titles of the adult pornography video files, and the trial court erred by not *sua sponte* instructing the detective to merely indicate the exhibit contained a certain number of adult pornographic videos. Macias did not object to this testimony at trial, and we review only for fundamental error. *See, e.g.*, *State v. Henderson*, 210 Ariz. 561, 567, ¶ 19 (2005) (citing *Bible*, 175 Ariz. at 572). On fundamental error review, a defendant has the burden of proving an error occurred, the error was fundamental in nature, and the defendant was prejudiced thereby. *Id.* at ¶ 20 (citations omitted). However, an alleged error is not fundamental or reversible if it is invited by the objecting party. *State v. Logan*, 200 Ariz. 564, 565-66, ¶ 9 (2001) (citations omitted).

**¶37**     Here, defense counsel initiated the discussion regarding the titles of the videos when he asked the detective during cross-examination to agree that, while the titles suggested the videos contained child pornography, the videos actually consisted of adult pornography. Thus, the defense opened the door for the State to inquire as to the names of the remainder of the video files on redirect. Accordingly, as the initial introduction of these titles to the jury was by the defendant, thereby constituting invited error, it will not support reversal. *See id.* at 566, ¶ 11 ("The purpose of the [invited error] doctrine is to prevent a party from 'injecting error in the record and then profiting from it on appeal.'") (quoting *State v. Tassler*, 159 Ariz. 183, 185 (App. 1988)).

**¶38**     Moreover, any suggestion that the reading of the additional titles resulted in more prejudice than that arising from the initial introduction of the titles by defense counsel is speculation. Under fundamental error review, a defendant must affirmatively prove prejudice and may not rely upon speculation to carry this burden. *State v. Dickinson*, 233 Ariz. 527, 531, ¶ 13 (App. 2013) (quoting *State v. Munninger*, 213 Ariz. 393, 397, ¶ 14 (App. 2006)). We find no error, prejudicial or otherwise.

C.     Other-Act Evidence

**¶39**     Macias also fails to carry his burden of proving that admission of the adult pornography violated the prohibition against other-act evidence under Rule 404(b). Macias objected to this evidence only on the grounds of relevance and unfair prejudice. An objection on one ground will not preserve issues on other grounds. *State v. Lopez*, 217 Ariz. 433, 434-35, ¶ 4 (App. 2008) (citing *State v. Hamilton*, 177 Ariz. 403, 408 (App. 1993)).

Because Macias failed to object to the adult pornography based upon Rule 404(b), we review only for fundamental error. *Id.* (citing *Henderson*, 210 Ariz. at 567, ¶ 19, and *State v. Walker*, 181 Ariz. 475, 481 (App. 1995)).

**¶40** In arguing the adult pornography was prejudicial other-acts evidence under Rule 404(b), Macias relies on *State v. Coghill*, 216 Ariz. 578 (App. 2007), and *State v. Grannis*, 183 Ariz. 52 (1995), *disapproved of on other grounds by State v. King*, 225 Ariz. 87 (2010). This reliance is misplaced. In *Coghill*, the defendant was charged with sexual exploitation of children based upon his possession of child pornography. 216 Ariz. at 582, ¶ 11. Under those circumstances, this Court held the defendant's possession of legal adult pornography downloaded from the internet was irrelevant to show knowledge, opportunity, or intent to download child pornography and inadmissible for the proffered purpose of showing the defendant had a propensity to download child pornography. *Id.* at 585, ¶ 27 (citing Ariz. R. Evid. 404(b)). In *Grannis*, our Supreme Court held pornographic images, offered to prove that the defendant "had ongoing homosexual tendencies and was therefore unlikely to resist [the victim]'s sexual advances," were of such marginal relevance in a murder prosecution, given the defendant's admission he had a past homosexual experience and initially consented to the victim's advances, that the trial court erred in not finding their probative value to be substantially outweighed by the danger of unfair prejudice. 183 Ariz. at 55, 57.

**¶41** Here, however, the adult pornography was not admitted to show Macias had any propensity or tendency to commit the crimes charged. Rather, the adult pornography tended to prove Macias had the means and opportunity to commit the crimes charged, i.e. show pornographic videos to minors. Thus, unlike *Coghill* and *Grannis*, the evidence was directly relevant to the crimes charged.

**¶42** Furthermore, the Rule 404(b) concern identified in *Coghill* was the possibility "the jury might have improperly concluded that a person who downloads adult pornography would have a character trait predisposing that person to also download child pornography." 216 Ariz. at 585-86, ¶ 31. Because the jury acquitted Macias on the one count of sexual exploitation premised upon downloading child pornography, we are convinced, beyond a reasonable doubt, any possible error in the admission of adult pornography was harmless. *See Henderson*, 210 Ariz. at 607, ¶ 18 (noting error is harmless if it is proved "beyond a reasonable doubt that the error did not contribute to or affect the verdict or sentence") (citing *Bible*, 175 Ariz. at 588). Macias has not proved fundamental error.

D.     College Paper

¶43     Macias argues the trial court erred in admitting a paper he wrote for a college class as other-acts evidence of an "aberrant sexual propensity" pursuant to Arizona Rule of Evidence 404(c).  Although Macias purports, within the paper, to critique the policy of the Boy Scouts' discrimination against gay scout leaders, he also discusses, with approval, same-sex relationships between older and younger men.  He also discusses certain historical periods where older men mentored younger men — which "would involve sexual interaction between them" — and then directs the reader to "[i]magine i[f] this sort of living was still in effect today."

¶44     Rule 404(c) allows the admission of other-act evidence, in criminal cases involving sexual offenses, "if relevant to show that the defendant had a character trait giving rise to an aberrant sexual propensity to commit the offense charged." Before admitting evidence under Rule 404(c), the trial court must find: (1) "clear and convincing evidence supports a finding that the defendant committed the other act;" (2) "commission of the other act provides a reasonable basis to infer that the defendant had a character trait giving rise to an aberrant sexual propensity to commit the charged sexual offense," and (3) "the evidentiary value of proof of the other act is not substantially outweighed by the danger of unfair prejudice, confusion of the issues, or other factors mentioned in Rule 403." *State v. Aguilar*, 209 Ariz. 40, 49, ¶ 30 (2004) (citing Ariz. R. Evid. 404(c)(1)(A)-(C), and *Terrazas*, 189 Ariz. at 582).  In addition, the trial court must instruct the jury "as to the proper use of such evidence." Ariz. R. Evid. 404(c)(2).

¶45     In allowing admission of the college paper under Rule 404(c), the trial court made all the findings required for admission under that rule. In challenging the admission of the paper, Macias argues only that the prejudicial nature of the evidence outweighs its relevancy for showing sexual propensity.  The paper does not specifically approve of sexual relationships between adult men and minors and appears instead to describe sexual relationships between older and younger adult men.  These circumstances do not provide a reasonable basis upon which to infer Macias has an aberrant sexual propensity.  Because the paper has little if any probative value, we find its admission was error.

¶46     However, we also believe admission of the college paper was harmless error.  Other evidence of the charged crimes — primarily in the form of the victims' consistent testimony and the pictures, videos, and communications found on Macias' phone — was overwhelming to prove

Macias' guilt.  And although the State mentioned the college paper during closing argument, the paper was not a primary piece of evidence for the State, and no juror questions were directed at the paper.  Furthermore, the trial court appropriately instructed the jury as to the limited use of other-acts evidence.  *See supra* ¶ 34.  We cannot say, beyond a reasonable doubt, Macias' college paper was a material piece of evidence on which the jury based its verdicts.

**¶47**　　　　Macias also challenges the admission of his college paper on the basis that handwritten comments on it from the instructor constitute inadmissible hearsay.  Because Macias did not object on this basis below, our review of this claim is limited to fundamental error.  *Henderson*, 210 Ariz. at 567, ¶ 19.

**¶48**　　　　Hearsay is a statement "the declarant does not make while testifying at the current trial or hearing; and . . . a party offers in evidence to prove the truth of the matter asserted in the statement."  Ariz. R. Evid. 801(c).  Macias does not assert the State offered the instructor's comments to prove the truth of any matter asserted therein.  He has therefore not shown error in their admission.

### E.　　Uncharged Offenses

**¶49**　　　　Macias argues the trial court erred in allowing testimony from the victims regarding other uncharged acts of sexual misconduct by him.  Although the court failed to make the specific findings of admissibility of this evidence as required by Rule 404(c)(1)(D), *see supra* ¶ 44, "we may consider the entire trial record in determining whether it was harmless error for the court to admit [other-acts evidence] without first screening the evidence and making the findings Rule 404(c) requires," *State v. Vega*, 228 Ariz. 24, 29, ¶ 18 (App. 2011); *see also Aguilar*, 209 Ariz. at 50, ¶ 37 ("The trial court's failure to make a sufficient finding as to the first factor of Rule 404(c) might be harmless error if the record contained substantial evidence that the requirements of admissibility were met.") (citing *State v. Marshall*, 197 Ariz. 496, 499, ¶ 7 (App. 2000)).  On review of the record, we conclude the victims' testimony that Macias engaged in the same types of sexual misconduct on more than one occasion was properly admissible under Rule 404(c).

**¶50**　　　　First, as to the requirement of Rule 404(c)(1)(A) that there be clear and convincing evidence Macias committed the other acts, evidence of the acts consisted of the in-person testimony of the victims.  A victim's uncorroborated testimony is sufficient to prove an act occurred beyond a

reasonable doubt. *See Vega*, 228 Ariz. at 28 n.4, ¶ 19 (citing *State v. Williams*, 111 Ariz. 175, 177-78 (1974)). Macias' argument that the evidence cannot be considered clear and convincing because the victims were not specific as to dates and details is unavailing. A victim's inability to recall details of uncharged events does not automatically preclude a finding of clear and convincing evidence the event occurred. *See State v. Herrera*, 232 Ariz. 536, 546, ¶ 26 (App. 2013); *see also State v. Bowie*, 119 Ariz. 336, 342 (1978) ("Contradictions or a hazy recollection of events goes to the weight of the evidence, not its admissibility.") (citing *State v. Parker*, 106 Ariz. 54, 56 (1970)). On this record, we find the victims' testimony was sufficient to provide clear and convincing evidence Macias committed the uncharged acts.

**¶51** Second, the other acts testified to by the victims consisted of similar, if not identical, acts to those of the charged offenses, and these acts were committed around the same time as the charged offenses. The testimony, therefore, further satisfied the requirement of Rule 404(c)(1)(B) that the "other act provides a reasonable basis to infer that the defendant had a character trait giving rise to an aberrant sexual propensity to commit the crime charged." *See Herrera*, 232 Ariz. at 547, ¶ 28 (holding "'evidence of a prior similar sex offense committed against the same child' may show 'the defendant's lewd disposition or unnatural attitude toward the particular victim.'") (quoting *State v. Garner*, 116 Ariz. 443, 447 (1977)) (citation omitted); *State v. Garcia*, 200 Ariz. 471, 476, ¶ 28 (App. 2001) ("[A] defendant's aberrant sexual propensity might be proved by admitting evidence of similar acts committed near in time to the offense charged.") (citing *State v. McFarlin*, 110 Ariz. 225, 228 (1973)).

**¶52** Finally, the record reflects the evidentiary value of the testimony of the other acts of sexual misconduct by Macias "is not substantially outweighed by danger of unfair prejudice, confusion of the issues, or other factors mentioned in Rule 403." Ariz. R. Evid. 404(c)(1)(C). Consideration of the other factors listed in Rule 404(c)(1)(C)[5] supports admission of the other-acts evidence in this case. None of the other acts were remote; all took place within the same general time frame of the charged offenses; the other acts were similar to the charged offenses; and

---

[5] The trial court is directed to consider: "(i) [the] remoteness of the other act; (ii) [the] similarity or dissimilarity of the other act; (iii) the strength of the evidence that defendant committed the other act; (iv) [the] frequency of the other acts; (v) [any] surrounding circumstances; (vi) [any] relevant intervening events; (vii) other similarities or differences; [and] (viii) other relevant factors." Ariz. R. Evid. 404(c)(1)(C).

the evidence of the other acts was substantial and consistent, albeit imprecise, first-person testimony from multiple victims. As for the surrounding circumstances and frequency of the other acts, the evidence showed a general course of conduct by Macias in regard to how he interacted with the victims during the period the charged offenses were committed. Accordingly, the balancing of the probative value against the potential unfair prejudice of the other-act evidence weighs in favor of admission of the evidence.

¶**53** We further note the trial court gave a proper limiting instruction concerning the use of the other-act evidence. *See* Ariz. R. Evid. 404(c)(2). The instruction informed the jurors they "may" consider the other-act evidence to determine that Macias had a predisposition "to commit abnormal or unnatural sex acts," but only if they found "clear and convincing evidence" he committed the acts, and further instructed the jurors they could not find Macias guilty merely because he had committed the other acts or had a predisposition to commit the crimes charged. *See* Ariz. R. Evid. 404 cmt. to 1997 amend. ("At a minimum, the court should instruct the jury that the admission of other acts does not lessen the prosecution's burden to prove the defendant's guilt beyond a reasonable doubt, and that the jury may not convict the defendant simply because it finds that he committed the other act or had a character trait that predisposed him to commit the crime charged."). Any prejudice from the admission of the other-act evidence was appropriately mitigated by this instruction. *See State v. Leteve*, 237 Ariz. 516, 523, ¶ 17 (2015) (citing *State v. Villalobos*, 225 Ariz. 74, 80, ¶ 20 (2010)). Accordingly, the trial court did not commit reversible error by admitting the victims' testimony of the other uncharged acts of sexual misconduct by Macias without making the findings required by Rule 404(c)(1).

## VI.   Sufficiency of Evidence

¶**54** Macias contends the trial court erred in denying his motion for judgment of acquittal on six of the seven counts of furnishing harmful items to minors and one count of aggravated assault with sexual motivation, arguing the evidence was insufficient to support convictions on those counts. We review claims of insufficient evidence *de novo. State v. West*, 226 Ariz. 559, 562, ¶ 15 (2011) (citing *Bible*, 175 Ariz. at 595). In doing so, this Court's review is limited to whether substantial evidence supports the verdicts. *See State v. Scott*, 177 Ariz. 131, 138 (1993) (citing *State v. Guerra*, 161 Ariz. 289, 293 (1989)); *see also* Ariz. R. Crim. P. 20(a) (requiring a trial court to enter judgment of acquittal "if there is no substantial evidence to warrant a conviction"). Substantial evidence is evidence, viewed in the

light most favorable to sustaining the verdict, "that reasonable persons could accept as adequate and sufficient to support a conclusion of defendant's guilt beyond a reasonable doubt." *Id.* (quoting *State v. Mathers*, 165 Ariz. 64, 67 (1990), and *State v. Arredondo*, 155 Ariz. 314, 316 (1987)).

A.      Counts Five, Eight, Ten, Thirteen, and Fifteen: Furnishing Harmful Items to Minors

**¶55**          Counts Five, Eight, Ten, Thirteen, and Fifteen charged Macias with furnishing harmful items to five minor victims in violation of A.R.S. § 13-3506(A). Under this section, "[i]t is unlawful for any person, with knowledge of the character of the item involved, to recklessly furnish, present, provide, make available, give, lend, show, advertise or distribute to minors any item that is harmful to minors." A.R.S. § 13-3506(A). An item is harmful to minors if it appeals to the "prurient interest." A.R.S. § 13-3501(1)(a)(i).

**¶56**          At trial, the victims for each of these five counts testified Macias showed them pornography at his home. Macias argues this evidence is insufficient to support convictions on these counts because there was no proof the pornography the victims were shown was "prurient."

**¶57**          Material is "prurient" if it "appeal[s] to a morbid, shameful, disgusting, unhealthy, unwholesome, degrading interest in sex." *State v. Bartanen*, 121 Ariz. 454, 460 (1979). Moreover, "[f]inding an item to be harmful to minors calls for a particular[ized] examination applying the standard of an 'average adult' regarding what is appropriate for minors." *State v. Grainge*, 186 Ariz. 55, 59 (App. 1996). Victim testimony establishing that videos furnished by the defendant "contained graphic sex scenes" is sufficient evidence for a jury to determine the videos were harmful to minors, even when the videos are unavailable. *Id.* Furthermore, it is within the province of the jury to determine that materials were harmful to minors "when taken as a whole based on the evidence presented." *Id.* (citing *State v. Hummer*, 184 Ariz. 603, 607 (App. 1995)); *see also Smith v. United States*, 431 U.S. 291, 301 (1977) (holding "appeal to the prurient interest is one such question of fact for the jury to resolve").

**¶58**          Macias contends the movies shown to the victims do not meet the definition of prurient because what the victims testified to was "run-of-the-mill adult pornography." He does not cite any authority to support his position that "run-of-the-mill adult pornography" is, as a general rule, "suitable for minors." A.R.S. § 13-3501(1)(a). Each of the victims testified they were shown "pornographic movies," and four of the five victims

testified the pornography involved sexual intercourse.  The jury could reasonably conclude from this testimony the movies were "harmful to minors."

**¶59**        The fifth victim, A.V., only indicated Macias showed him pornography without providing any more specific description.  Such testimony, lacking in specific detail as to what the particular victim considered "pornographic" fails to establish sufficient evidence of the crime of furnishing harmful items to minors.  Therefore, the conviction and sentence related to Count Five is reversed.

#### B.        Count Nineteen: Furnishing Harmful Items to Minors

**¶60**        Count Nineteen charged Macias with furnishing harmful items to minors in violation of A.R.S. § 13-3506(A) based upon the pictures and videos of Macias' genitals that he sent to E.V.'s iPod and iPhone. Macias argues the evidence was insufficient to support the conviction on this count because A.R.S. § 13-3506, by its terms, "does not apply to the transmission or sending of items over the internet."  A.R.S. § 13-3506(B). Because the non-internet provision in A.R.S. § 13-3506(B) creates an exception to the statute defining the criminal offense of furnishing harmful items to minors, Macias had the burden of establishing that the furnishing of the images at issue involved transmission over the internet.  *See Maricopa Cty. Juv. Action No. JT9065297*, 181 Ariz. 69, 82 (App. 1994) ("A defendant who relies upon an exception to a criminal statute made by a proviso or distinct clause has the burden of establishing and showing that she comes within the exception.") (citing *United States v. Henry*, 615 F.2d 1223, 1235 (9th Cir. 1980)); *see also State v. Kelly*, 210 Ariz. 460, 463, ¶ 11 (App. 2005) ("Because the . . . provision [at issue] functions as an exception, it is not an element of the offense that the state must prove."); *State v. Jung*, 19 Ariz. App. 257, 262 (1973) (holding the prosecution is "not required to negative statutory exceptions — such exception is a matter of defense where it is not an ingredient of the offense") (citing *State v. Quandt*, 17 Ariz. App. 33, 34 (1972)).

**¶61**        As used in A.R.S. § 13-3506, the term "internet" means "the combination of computer facilities and electronic transmission media, and related equipment and software, comprising the interconnected worldwide network of computer networks that employ the transmission control protocol or internet protocol or any successor protocol to transmit information."  A.R.S. § 13-3506.01(F)(1).  In arguing he was improperly convicted under the wrong statute, Macias relies upon testimony elicited from a detective that the images in question "were transmitted over the

internet." When testifying about the images being transmitted over the internet, however, the detective was referring to images recovered from the victim's iPod. An iPod requires use of the internet to transmit or receive information because, unlike an iPhone, it lacks cellular telephone capability. But both the detective and victim testified Macias sent the victim inappropriate videos of his genitals on both the victim's iPhone and iPod. Limiting the issue to those videos sent from Macias' iPhone to the victim's iPhone, Macias presented no evidence that the images that are the subject of Count Nineteen were transmitted via the iPhone's internet capability, rather than the non-internet cellular telephone network. Macias, therefore, failed to meet his burden of proving his conduct fell outside the purview of A.R.S. § 13-3506.

## C.    Count Twenty: Aggravated Assault

**¶62**    Count Twenty charged Macias with aggravated assault with sexual motivation of E.V. in violation of A.R.S. §§ 13-118 and -1204(A)(6). As relevant here, the State was required to prove he knowingly touched E.V. "with intent to . . . provoke." A.R.S. §§ 13-1203(A)(3), -1204(A). While acknowledging E.V. felt uncomfortable about being kissed on the lips by Macias, Macias asserts a complete absence of evidence regarding his intent to provoke. We disagree.

**¶63**    The term "provoke" is not defined by statute. "In the absence of statutory definitions, we give words their ordinary meaning." *State v. Cox*, 217 Ariz. 353, 356, ¶ 20 (2007) (citing *State v. Riggs*, 189 Ariz. 327, 333 (1997)); *see also* A.R.S. § 1-213 (stating undefined words "shall be construed according to the common and approved use of the language"). "Provoke" generally means "[t]o stir to action or feeling" or "[t]o give rise to; bring about." Am. Heritage Dictionary 1419 (5th ed. 2011). Moreover, criminal intent, being a state of mind, is generally established by circumstantial evidence. *State v. Bearup*, 221 Ariz. 163, 167, ¶ 16 (2009) (quoting *State v. Routhier*, 137 Ariz. 90, 99 (1983)).

**¶64**    The evidence at trial established Macias had a strong sexual attraction to E.V. and "wanted to make love" to him. Based upon this evidence, the jurors could reasonably conclude Macias deliberately kissed E.V. with the intent to bring about an emotional response or feelings of attraction. On this record, there was substantial evidence to support the conviction for aggravated assault with sexual motivation. We find no error.

**CONCLUSION**

**¶65**          For the foregoing reasons, we reverse the conviction and sentence imposed for Count Five and vacate the convictions and sentences imposed for Counts Two and Three.  The convictions and sentences on the fourteen remaining counts are affirmed.

